**2021-2167**

---

**United States Court of Appeals For The Federal Circuit**

COOPERATIVE ENTERTAINMENT, INC.,
Plaintiff-Appellant,

v.

KOLLECTIVE TECHNOLOGY, INC.,
Defendant-Appellee.

Appeal from the United States District Court for the Northern District of California, Case No. 5:20-CV-07273, District Judge Edward J. Davila

# RESPONSIVE BRIEF OF APPELLEE

Michael S. Dowler
Park, Vaughan, Fleming & Dowler, LLP
5847 San Felipe, Suite 1700
Houston, TX 77057
(713) 821-1540
mike@parklegal.com

January 14, 2022

*Counsel for Appellee Kollective Technology, Inc.*

## CLAIM 1 OF U.S. PATENT NO. 9,432,452

1. A system for virtualized computing peer-based content sharing comprising:

at least one content delivery server computer constructed and configured for electrical connection and communication via at least one communications network; and

at least one peer-to-peer (P2P) dynamic network including a multiplicity of peer nodes, wherein the multiplicity of peer nodes consume the same content within a predetermined time, wherein the multiplicity of peer nodes are constructed and configured for electronic communication over the at least one P2P dynamic network, wherein the at least one P2P dynamic network is based on at least one trace route; wherein the multiplicity of peer nodes is distributed outside controlled networks and/or content distribution networks (CDNs) that are included within the at least one communications network;

wherein the at least one content delivery server computer is operable to store viewer information, check content request, use the trace route to segment requested content, find peers, and return client-block pairs;

wherein distribution of P2P content delivery over the at least one P2P dynamic network is based on content segmentation;

wherein content segmentation is based on CDN address resolution, trace

route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin and other server side scheduling/resource allocation techniques.

# CERTIFICATE OF INTEREST

Counsel for Appellee Kollective Technology, Inc. certifies the following:

1. The full name of all entities represented by the undersigned counsel in this matter is Kollective Technology, Inc.

2. There are no other real parties in interest represented by the undersigned.

3. There are no parent corporations or publicly held companies that own 10 percent or more of the stock of the party represented by the undersigned.

4. The names of all law firms, partners, and associates that (a) appeared for the party now represented by me in the originating court or agency or (b) are expected to appear in this Court for the entity (not including those who have already entered an appearance in this case) are:

Silicon Valley Law Group

Michael W. Stebbins

Stephen S. Wu

Mark G. Van Niekerk

5. There are no known cases that will directly affect or be directly affected by this Court's decision in the pending appeal (not including the original case number for this case).

6. Information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):

None / Not Applicable.

Dated: January 14, 2022

/s/ Michael S. Dowler

Michael S. Dowler
Park, Vaughan, Fleming & Dowler, LLP
5847 San Felipe, Suite 1700
Houston, TX 77057
(713) 821-1540
mike@parklegal.com

Counsel for Appellee Kollective Technology, Inc.

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........ iv

TABLE OF CONTENTS ........ vi

TABLE OF AUTHORITIES ........ viii

INDEX OF ABBREVIATIONS ........ xiii

STATEMENT OF RELATED CASES ........ xiv

STATEMENT OF THE ISSUES ........ 1

STATEMENT OF THE CASE ........ 2

SUMMARY OF THE ARGUMENT ........ 3

ARGUMENT ........ 6

I. STANDARD OF REVIEW ........ 6

II. THE ’452 PATENT—BACKGROUND ........ 6

III. LEGAL STANDARD ........ 12

A. Fed. R. Civ. P. 12(b)(6) ........ 12

B. 35 U.S.C. § 101 ........ 13

C. Patent Eligibility Under 35 U.S.C. § 101 is Properly Resolved on a Motion Pursuant to Fed. R. Civ. P. 12(b)(6) ........ 15

IV. CEI’S APPEAL SHOULD BE DISMISSED BECAUSE ITS ENTIRE PREMISE ERRS AS A MATTER OF LAW ........ 16

V. THE ’452 PATENT FAILS TO CLAIM PATENTABLE SUBJECT MATTER ........ 23

A. *Alice* Step One ........ 23

1. The district court's proper analysis..........................................24

2. CEI's erroneous analysis..........................................................32

B. *Alice* Step Two ..........................................................................38

1. The district court's proper analysis..........................................39

2. CEI's erroneous analysis..........................................................45

VI. THE DISTRICT COURT PROPERLY INVALIDATED ALL THE '452 PATENT CLAIMS ..........................................................................52

VII. CONCLUSION...............................................................................57

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

## Cases

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) .......... 15, 40

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) .......... 23, 31, 37, 45, 48, 50, 51

*Alacritech, Inc. v. Intel Corp.*,
817 F. App'x 995 (Fed. Cir. 2020) .......... 11, 41

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
134 S. Ct. 2347 (2014) .......... 13, 14, 15, 23, 38, 45, 51

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC,*
939 F.3d 1355 (Fed. Cir. 2019) .......... 38

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
788 F.3d 1371 (Fed. Cir. 2015) .......... 35

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 13, 32, 46, 49

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) .......... 40, 41

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 12

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018) .......... 14, 15, 26, 56

*Bilski v. Kappos,*
130 S. Ct. 3218 (2010) .......... 13

*BSG Tech. LLC v. BuySeasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018) .......... 36, 39

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) .......... 25, 50

*Cardionet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020) ........................................................ 37

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019) ................................................. 35, 49

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019) ........................................................ 34

*Chavez v. U.S.*,
683 F.3d 1102 (9th Cir. 2012) ........................................................... 6

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017) ..................................... 16, 33, 40, 56

*Content Extraction and Transmission LLC v. Wells Fargo, Bank Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) ........................... 14, 20, 26, 33, 38, 55

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020) ........................................................ 36

*Diamond v. Diehr*,
450 U.S. 175 (1981) ................................................................ 23, 37, 50

*Easyweb Innovations, LLC v. Twitter, Inc.*,
2016 WL 1253674 (E.D.N.Y. Mar. 30, 2016) .................................. 25

*Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*,
958 F.3d 1178 (Fed. Cir. 2020) ........................................................ 51

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ..................................... 14, 26, 47, 51

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ........................................................ 23

*Ericsson, Inc. v. TCL Comm'n Tech. Holdings Ltd.*,
955 F.3d 1317 (Fed. Cir. 2020) ........................................................ 36

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) (per curiam) ................................ 40, 46

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) ........................................................ 23

*Genetic Techs. Ltd. v. Merial L.L.C.*,
818 F.3d 1369 (Fed. Cir. 2016) ........................................................ 16, 33

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ........................................................ 33, 40, 46

*In re TLI Commc'ns LLC Patent Litig. v. AV Auto., L.L.C.*,
823 F.3d 607 (Fed. Cir. 2016) ........................................ 14, 26, 31, 38, 47, 50

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ........................................................ 14, 27

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
850 F.3d 1315 (Fed. Cir. 2017) ........................................................ 25

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ........................................ 14, 20, 33, 37, 49, 50

*Koninkliijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019) ........................................................ 24, 32, 41

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ........................................................ 13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012) ........................................................ 13, 38, 51

*Mentone Solutions LLC v. Digi Int'l, Inc.*,
21-1202, Slip Op. at 7 (Fed. Cir. Nov. 11, 2021) ........................................ 34

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015) ........................................................ 6, 33

*Parks Sch. of Bus., Inc. v. Symington*,
51 F.3d 1480 (9th Cir. 1995) ........................................................ 12

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ........................................ 55

*RecogniCorp, LLC v. Nintendo of Am., Inc.*,
855 F.3d 1322 (Fed. Cir. 2017) .................................................................. 37

*Sage Prods., Inc. v. Devon Indus., Inc.*,
126 F.3d 1420 (Fed. Cir. 1997) ............................................................ 55, 57

*SAP America, Inc. v. Investpic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) ............................................................ 35, 42

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) ....................................................... 14, 26, 31

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) ..................................................................... 42

*Uniloc USA, Inc. v. LG Electronics USA, Inc.*,
957 F.3d 1303 (Fed. Cir. 2020) ............................................................ 24, 36

*Univ. of Florida Rsch. Found., Inc. v. Gen. Elec. Co.*,
916 F.3d 1363 (Fed. Cir. 2019) ............................................................ 36, 52

*VideoShare, LLC v. Google, Inc.*,
2016 WL 4137524 (D. Del. Aug. 2, 2016) .................................................. 25

*Windy City Innovations, LLC v. Microsoft Corp.*,
193 F.Supp.3d 1109 (N.D. Cal. 2016) ......................................................... 54

**Statutes**

35 U.S.C. § 101 ..................................................................................... 1, 2, 13, 20

35 U.S.C. § 103 ......................................................................................... 4, 22, 43

**Rules**

Federal Circuit Rule 47.5 ................................................................................... xi

Fed. R. Civ. P. 12 ........................................................................ vi, 1, 15, 33, 45

Fed. R. Civ. P. 12(b)(6) ........................................................................... 2, 12

Federal Circuit Rule 28(a)(4) ........................................................................... xi

Rule 3-1, U.S. District Court Northern District of California, Patent
Local Rules (Revised November 4, 2020) .................................................. 54

# INDEX OF ABBREVIATIONS

| TERM | MEANING |
|---|---|
| ’452 patent | U.S. Patent 9,432,452 |
| Cooperative Entertainment, Inc. | CEI |
| Kollective Technology, Inc. | Kollective |
| P2P | Peer-to-Peer |
| CDN | Content Delivery Network |

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 28(a)(4) and 47.5, counsel for Appellee Kollective Technology, Inc. states: (a) no other appeal in or from the same civil action or proceeding in the trial court was previously before this or any other appellate court; and (b) there is no other case known to counsel pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in this appeal.

## STATEMENT OF THE ISSUES

Whether the district court correctly found that the claims of U.S. Patent 9,432,452 are directed to patent ineligible subject matter under 35 U.S.C. § 101 and, thereby, correctly dismissed Cooperative Entertainment, Inc.'s patent infringement complaint pursuant to Fed. R. Civ. P. 12.

## STATEMENT OF THE CASE

Appellant Cooperative Entertainment, Inc. ("CEI") is a non-practicing entity, which alleges it acquired ownership of U.S. Patent 9,432,452 ("the '452 patent") from Joosy, Inc. (Appx219-224; Appx272.) CEI accused Kollective Technology, Inc. ("Kollective") of infringing the '452 patent though Kollective's sale of a software product that Kollective and its corporate predecessors had been selling for nearly 12 years prior to the original filing date of the application that led to the '452 patent. (Appx272.)

Kollective filed a motion pursuant to Fed. R. Civ. P. 12(b)(6) seeking to dismiss CEI's patent infringement complaint for two reasons: (1) the '452 patent claims unpatentable subject matter under 35 U.S.C. § 101, and (2) the complaint fails to adequately plead patent infringement under the *Twombly/Iqbal* pleading standard. (Appx080-213.) Judge Davila presiding in the Northern District of California issued a 15-page decision granting Kollective's motion under 35 U.S.C. § 101, finding that the '452 patent claims unpatentable subject matter. (Appx001-015 (not reaching the adequacy of CEI's patent infringement allegations).) The district court subsequently entered judgment for Kollective (Appx016), and CEI filed the instant appeal.

## SUMMARY OF THE ARGUMENT

CEI's appeal should be dismissed for two independent reasons.

First, the *sole* theory underlying the entirety of CEI's appeal errs as a matter of law. The premise of CEI's appeal is that the '452 patent claims patent eligible subject matter because "the inventive concept was… segmenting and distributing the content based on the trace[]route." (CEI Opening Br. at 1-2, 15-16, 18-19, 21-22, 25-26, 32-33, 35, 38, 39, 41, 44, 46, 47, and 50.) Yet, it is entirely irrelevant whether trace routes are used to segment data because no claim in the '452 patent is limited to that. Instead, *every* claim includes the following limitation:

> wherein content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin and other server side scheduling/resource allocation techniques.

(Appx036, 10:49-54 (independent claim 1); Appx037, 11:14-20 (independent claim 5); Appx034, 5:49-56 (same); Appx033, 4:32-36 ("[E]mbodiments of the present invention include dynamic networks based upon a trace rout or other dynamic network segmentation strategy, e.g., content delivery networks (DCN) internet protocol (IP) address.").) Thus, contrary to the entire premise of CEI's Opening Brief, the '452 patent claims segmenting data based—not merely on a trace route but—on any "server side scheduling/resource allocation technique".

The district court noted and held the same thing, stating:

> As for CEI's argument that 'the patentee took an existing tool—trace[]routes used to test the pathway between and among nodes—and used that existing tool to make something new' by using trace routes to 'perform the content segmentation, [Appx229], that contention is inconsistent with the plain language of the patent itself. Neither the specification nor the independent claims rely *solely* on trace routes to accomplish the purpose of transmitting and delivering segmented content among peers.

(Appx013, citing '452 patent claims 1 and 5.) The district court further noted the Patent Office said the same thing when allowing the '452 patent claims. (Appx013-014 ("allowing the '452 patent to issue over a rejection under 35 U.S.C. § 103 because….'the the content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin and other server side scheduling/resource allocation techniques'".).) Accordingly, the *entire* premise of CEI's appeal is a fallacy and should be dismissed for that reason alone.

Second, CEI's critique of the district's court's *Alice* analysis advances a series of irrelevant and/or legally erroneous arguments that fail to warrant reversal. Notably missing from any of CEI's protestations is any distinguishing of the fact that the '452 patent claims do nothing more than call for a content delivery server that segments data and then distributes that segmented data to a particular network of peer-to-peer ("P2P") nodes. As the district court correctly concluded (Appx005-015), it is self-evident from the claim language itself (as informed by

the patent specification) that the focus of the claims is not on any specific improvement in computer functionality but rather on a process that qualifies as an abstract idea for which computers are invoked merely as a tool. This Court's precedent is replete with cases holding nearly identical claims unpatentable. As such, CEI advances no substantive reason for reversal.

Finally, CEI incorrectly identifies the facts and ignores the law when arguing the district court (1) lacked jurisdiction with respect to claims 4 and 6-15 and (2) should not have invalidated claims 2-4 and 6-15 because it did not specifically discuss those claims in its decision. CEI's jurisdictional argument incorrectly claims "CEI only asserted claims 1-3 and 5 in the Amended Complaint," yet the Amended Complaint specifically states CEI was *not "limiting the claims that will be asserted*" (Appx050). Lastly, CEI fails to tell the Court that Kollective's motion expressly advanced the proposition that "[c]laim 1 of the '452 patent is representative of the ['452 patent] claims" (Appx088; Appx094), that CEI did not and does not dispute that, and that courts across the country, including this Court, routinely evaluate the § 101 issues for all claims in a patent based on a representative claim.

## ARGUMENT

## I. STANDARD OF REVIEW

This Court reviews the grant of a motion to dismiss under applicable regional circuit law. *OIP Techs., Inc. v. Amazon.com, Inc.,* 788 F.3d 1359, 1362 (Fed. Cir. 2015). As relevant here, the Ninth Circuit reviews the grant of a motion to dismiss de novo. *Chavez v. U.S.,* 683 F.3d 1102, 1108 (9th Cir. 2012). Accordingly, the Court's review of the present issues is de novo.

## II. THE '452 PATENT—BACKGROUND

The '452 patent is entitled "Systems and Methods for Dynamic Networked Peer-To-Peer Content Distribution." (Appx017-037.) Its claims are directed to "[p]eer-to-peer (P2P) dynamic networks and/or sub-networks for file sharing between peers receiving the same content." (Appx017, Abstract.) As the district court found, "the focus of the '452 patent is the preparation and transmission of content to peers through a computer network". (Appx006.) As CEI itself summarized it, the '452 patent is directed to "a better way of sharing content". (Appx006, citing Appx228.)

The '452 patent drawings illustrate how content/data is transmitted via the patented network. Figure 2 (reproduced below on the left) shows individual conventional peer computers "a" -- "n" requesting a file segment (such as a

segment/portion of a movie) from a conventional content delivery network ("CDN"). (Appx019; Appx035, 8:6-32.)







This occurs, for example, in situations where each person sitting at one of the computers "a" -- "n" wants to watch the same movie*, i.e.,* each requests the same movie from a central repository of data/movies. Figure 3 (reproduced above on the right) shows peer computer "a" requesting the file segment(s) that peers "b" -- "e" previously received from the CDN. (Appx020; Appx035, 8:6-32.) Figures 4-9 (not reproduced here) likewise show the various peers "b" -- "n" requesting file segments from each other. (Appx021-026; Appx035, 8:6-32.)

By peers sharing file segments among one another, the peers do not need to burden the network connection to the CDN in order to retrieve the entire file/movie—they simply collect the various segments from each other and reconstitute the segments into a complete file. (Appx033, 4:55-60; Appx034, 5:30-48.) As the district court explained without challenge from CEI, this data sharing is akin to "students providing each other with photocopied chapters of a textbook instead of each student obtaining the textbook from the bookstore". (Appx007.)

The ’452 patent acknowledges that peer-to-peer sharing of data has been well known for decades. (Appx032, 1:17-3:34.) Indeed, CEI does not deny that Kollective’s corporate predecessors have been practicing P2P technology since 2000, and that Kollective has multiple patents on the subject matter that predate the ’452 patent. (Appx088.)

Kollective previously demonstrated to the district court (Appx088; Appx094) and CEI did not, and does not, dispute that claim 1 of the ’452 patent, set forth below, is representative of the ’452 patent claims:

> 1. A system for virtualized computing peer-based content sharing comprising:
>
> at least one content delivery server computer constructed and configured for electrical connection and communication via at least one communications network; and
>
> at least one peer-to-peer (P2P) dynamic network including a multiplicity of peer nodes, wherein the multiplicity of peer nodes consume the same content within a predetermined time, wherein the multiplicity of peer nodes are constructed and configured for electronic communication over the at least one P2P dynamic network, wherein the at least one P2P dynamic network is based on at least one trace route; wherein the multiplicity of peer nodes is distributed outside controlled networks and/or content distribution networks (CDNs) that are included within the at least one communications network;
>
> wherein the at least one content delivery server computer is operable to store viewer information, check content request, use the trace route to segment requested content, find peers, and return client-block pairs;

> wherein distribution of P2P content delivery over the at least one P2P dynamic network is based on content segmentation;
>
> wherein content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin and other server side scheduling/resource allocation techniques.

(Appx036, 10:25-54.)

Claim 1 shows it only calls for two structural components: (1) a content delivery server computer, and (2) at least one a peer-to-peer (P2P) dynamic network. The remainder of claim 1, as illustrated in connection with the figure below, simply describes operating characteristics typical of any content distribution network, wherein two P2P networks are shown to illustrate the prior art concept of a trace route.



Specifically, claim 1 states the content delivery server is "operable" to store viewer information, check content requests, use a trace route to segment requested content, find peers, and return client-block pairs. (Appx036, 10:42-45.) As with each of these claimed functionalities, CEI does not dispute that a trace route is a prior art concept consisting of the internet protocol (IP) addresses of devices through which data passes on its route between its source and destination. (Appx033, 3:50-54; Appx034, 5:1-2; CEI Opening Br. at 25 ("the pathway between the client and the server (i.e., a trace route)"); Appx007 (CEI admitting trace routes were known)[1].) For example, Peers A-C above would have a trace route (Trace $Route_1$) different from that of Peers D-F (Trace $Route_2$) since the data for those peer groups travels across different network paths/routes.

The last two clauses of claim 1 require that the data transmitted over the P2P network be segmented (*i.e.,* broken into blocks of data), where the content segmentation is based on any server side scheduling/resource allocation technique. More specifically, claim 1 states "wherein content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and

[1]CEI repeatedly admits trace routes were known in the prior art, alleging that "the patentee took an existing tool—trace[]routes used to test the pathway between and among nodes…". (Appx229; CEI Opening Br. at 10 ("It was known in the prior art to use trace routes…".); CEI Opening Br. at 23 ("The prior art used trace routes to test pathways in the network architecture for CDN's to push out content."), citing Appx046, ¶ 11.)

its neighbors, round-robin *and other server side scheduling/resource allocation techniques*". (Appx036, 10:49-54 (emphasis added); Appx034, 5:49-56 (same); Appx033, 4:32-36 ("[E]mbodiments of the present invention include dynamic networks based upon a trace rout or other dynamic network segmentation strategy, e.g., content delivery networks (DCN) internet protocol (IP) address.").) The '452 patent acknowledges that content segmentation is a well-known prior art technique for distributing data in P2P networks. (Appx032, 2:29-39.) And as the district court noted, this Court has acknowledged the same thing. (Appx012, citing *Alacritech, Inc. v. Intel Corp.*, 817 F. App'x 995 (Fed. Cir. 2020) (discussing patentability of patents issued in 2007, 2008, and 2010 that concerned dividing data in segments for transmission, and describing prior art from 1981 teaching a TCP protocol that segmented data into separate packets for transmission).)

The '452 patent further states that all the components of the claimed system are conventional. For example, the claimed "content delivery server," "peer-to-peer dynamic network," and "content distribution network" can be virtually any server capable of sharing content files. (Appx032, 1:17–20 ("Generally, it is known in the relevant prior art to provide peer-to-peer (P2P) networks via the internet for sharing digital content, including video, for live streaming service over content distribution networks (CDNs)."); Appx034, 5:59-64 ("In one embodiment of the present invention, the systems and methods of the present invention may be

integrated with applications (Apps) for mobile devices, including but not limited to smart phones, tablet computers, mobile computers, mobile communication devices, and the like, and combinations thereof.”).)

The ’452 patent further acknowledges that “no customized or proprietary software” is required for the system and “existing technologies and/or software” was available in the prior art to download peer content. (Appx034, 5:64-67 (“no customized or proprietary software download to the peer node content recipient devices is required for the systems and methods of the present invention”); Appx034, 5:66–6:5 (“[E]xisting technologies and/or software that may be used to download peer node content include either Adobe Flash or a combination of W3C standards WebRTC and MediaSource, along with modern web browsers like WebKit, Google Chrome, Apple Safari, Mozilla, and/or MS IE.”).)

## III. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of claims alleged in the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). To survive a Rule 12(b)(6) motion, the plaintiff must allege facts sufficient to state a claim to relief that is “plausible on its face.” *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (Dismissal “is proper only where there is no cognizable legal

theory or an absence of sufficient facts to support a cognizable legal theory.”). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001). Although factual allegations are taken as true, legal conclusions are given no deference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B. 35 U.S.C. § 101**

35 U.S.C. § 101 defines patent-eligible subject matter. It provides, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor...." 35 U.S.C. § 101. For over 150 years, the Supreme Court has recognized an implicit exception to these broad categories encompassing "[l]aws of nature, natural phenomena, and abstract ideas[, which] are not patentable." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 132 S. Ct. 1289, 1293, (2012) (citation and internal quotation marks omitted); *see also Bilski v. Kappos,* 130 S. Ct. 3218, 3221 (2010).

In *Mayo* and in *Alice,* the Supreme Court set forth a framework for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 134 S. Ct. 2347, 2355 (2014). At *Mayo/Alice*

"step one", a court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* The category of abstract ideas embraces "fundamental economic practice[s] long prevalent in our system of commerce," *id.* at 2356 (quoting *Bilski,* 561 U.S. at 611), including "longstanding commercial practice[s]" and "method[s] of organizing human activity," *id.*

The category of abstract ideas is not limited to economic or commercial practices or methods of organizing human activity. *Intellectual Ventures I LLC v. Symantec Corp.,* 838 F.3d 1307, n. 5 (Fed. Cir. 2016) (collecting cases). For example, this Court has long held that the concepts, like those here, of collecting, analyzing, and displaying data are patent ineligible. *See e.g., Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,* 874 F.3d 1329 (Fed. Cir. 2017); *Intellectual Ventures I,* 838 F.3d 1307 (Fed. Cir. 2016); *In re TLI Commc'ns LLC Patent Litig. v. AV Auto., L.L.C.,* 823 F.3d 607 (Fed. Cir. 2016); *Berkheimer v. HP Inc.,* 881 F.3d 1360 (Fed. Cir. 2018); *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350 (Fed. Cir. 2016); *Intellectual Ventures I LLC v. Capital One Bank (USA),* 792 F.3d 1363 (Fed. Cir. 2015); *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,* 776 F.3d 1343 (Fed. Cir. 2014).

If a claim is directed to a patent-ineligible concept, the court must proceed to *Mayo/Alice* "step two" and ask "what else is there in the claims before us?" *Alice,* 134 S. Ct. at 2355 (citation and internal quotation citation omitted). Step two is "a

search for an inventive concept—*i.e.,* an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (citation and internal quotation marks omitted).

At *Mayo/Alice* step two, the search is for "an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Id.* at 2357 (citation and internal quotation marks omitted). And "[s]imply appending conventional steps, specified at a high level of generality," which are "well known in the art" and consist of "well-understood, routine, conventional activit[ies]" previously engaged in by workers in the field, is not sufficient to supply the inventive concept. *Id.* at 2357, 2359 (citations and internal quotation marks omitted).

### C. Patent Eligibility Under 35 U.S.C. § 101 is Properly Resolved on a Motion Pursuant to Fed. R. Civ. P. 12(b)(6)

Patent eligibility under 35 U.S.C. § 101 is a question of law based on underlying facts. *See Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1125 (Fed. Cir. 2018); *Berkheimer,* 881 F.3d at 1364-65 (Fed. Cir. 2018). Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law. *See, e.g., Genetic Techs. Ltd.*

*v. Merial L.L.C.,* 818 F.3d 1369, 1380 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (same).

## IV. CEI'S APPEAL SHOULD BE DISMISSED BECAUSE ITS ENTIRE PREMISE ERRS AS A MATTER OF LAW

The *entire* premise of CEI's appeal is that the '452 patent claims patent-eligible subject matter because its claims include the "inventive concept" of segmenting data/content based on a trace route. (CEI Opening Br. at 1, 2, 15, 16, 18, 19, 21, 22, 25, 26, 32, 33, 35, 38, 39, 41, 44, 46, 47, and 50.) As shown below, and as the district court correctly pointed out, *none* of the '452 patent claims call for segmenting content based on a trace route, as is indisputably evident from the claim language itself, the '452 patent specification, and the stated reasons the Patent Office gave for allowing the claims. As such, CEI's appeal should be summarily dismissed as presenting no legitimate, cognizable reason for reversing the district court's decision.

As shown below, beginning with the Statement of the Issues in CEI's Opening Brief, the *entire* premise of CEI's appeal is that the '452 patent claims the inventive concept of segmenting content based on a trace route.

STATEMENT OF THE ISSUES

> 1. Whether the district court legally erred in determining on the pleadings that all of the claims of U.S. Patent No. 9,432,452 (the "'452 Patent") are directed to an abstract idea under *Alice* Step One, ***even though the asserted claims specifically require a dynamic peer-to-peer network that uses trace routes to segment internet content to its members***.
>
> 2. Whether the district court legally erred in determining on the pleadings that all of the claims of the '452 Patent lacked inventive concept under *Alice* Step Two, ***even though CEI specifically plead and argued that the inventive concept was the "use [of] trace[]routes to identify common content that will be consumed by the peers and then segmenting and distributing the content based on the trace[]route."***

(CEI Opening Br. at 1-2 (emphasis added).) CEI then repeats this same, singular appellate theory throughout the entirety of its Opening Brief, as follows:

> The novelty of the '452 patent, the patentee argued to the U.S. Patent Office, was that the claims use means of testing [i.e., trace routes] to further segment the actual content being delivered…." Appx046, ¶ 11; accord Appx064, ¶ 11.

(CEI Opening Br. at 15-16.)

> The Patent Office recognized that the claims defined over the prior art in its Notice of Allowance based, *inter alia,* on the use of the trace route to segment requested content. Appx046, ¶¶ 11, 12, accord Appx064, ¶¶ 11, 2.

(CEI Opening Br. at 16.)

> [T]he claims specifically teach 'distribution of P2P content' over a 'P2P dynamic network' that is 'based on content segmentation' using 'trace route to CDN and P2P server managers.'

(CEI Opening Br. at 18.)

> [T]he district court again failed to understand the specifically claimed inventive concept: improved dynamic P2P network created from segmenting content based on a trace route.

(CEI Opening Br. at 19.)

> A. The District Court Failed to Determine That the Claims Were Specifically Directed to the Use of Trace Routes to Segment User Content Over a Dynamic P2P Network

(CEI Opening Br. at 21.)

> Regardless of whether 'segmentation' is 'data preparation,' the claims are not directed to merely segmentation, but rather to segmentation based on the trace route: 'use the trace route to segment requested content…'

(CEI Opening Br. at 22.)

> The prosecution history also tells the same story. The patent owner argued that using the trace route to determine segmentation of the P2P network was novel. Appx046. This was the reason for allowance*, id.,* and is the difference from the prior art.

(CEI Opening Br. at 25.)

> The claims detail a new way of distributing content from the CDN through the dynamic P2P network using the trace route to implement segmentation based on specific characteristics of the peers in the network.

(CEI Opening Br. at 26.)

> The district court inaccurately characterized the claims as merely moving data around through segmentation, but this analysis overlooked the requirements of the claims and missed the direction of the claims—virtualized content sharing based on a trace route, not manipulation of the content.

(CEI Opening Br. at 26.)

> Here, by contrast, CEI pleads that the patent was allowed because CEI used a trace route differently. Appx045-046.

(CEI Opening Br. at 32.)

> Because claims 1 and 5 are directed to an improved dynamic P2P network based on segmenting content on a trace route, as claimed, they satisfy *Alice* Step One. The district court erred holding otherwise, and this decision should be vacated and remanded.

(CEI Opening Br. at 32.)

> D. The Claim Limitations Specifically Require an Improved Dynamic P2P Network Based on Segmenting Content on a Trace Route

(CEI Opening Br. at 33.)

> The '452 patent claims set forth specific improvements to content sharing over dynamic P2P networks based on segmenting content on a trace route.

(CEI Opening Br. at 35.)

> III. The District Court Legally Erred Under *Alice* Step Two Because the Asserted Claims of the '452 Patent Teach the Inventive Concept of Using Information from a Trace Route to Create a Dynamic P2P Network

(CEI Opening Br. at 38.)

> CEI has consistently referred to the invention of the '452 patent, whether at the patent office, at the district court, and now here, as involving dynamic P2P networks formed from a trace route.

(CEI Opening Br. at 39.)

> Yet, the Amended Complaint is clear that the inventive concept is the use of 'trace routes' to 'perform content segmentation' over a dynamic P2P network.

(CEI Opening Br. at 41.)

> However, as shown *supra*, CEI asserted that the claims on their face were (1) not results based or functional based, and (2) used a novel combination of technology to achieve an improved dynamic P2P

> network based on segmenting content on a trace route. *See* SOC, III, *supra*; *see also* Appx047 ("The '452 patent claims all require segmenting the digital content according to the trace routes. ('452, FIGS. 2-9 and accompanying disclosure at col. 8:6-32…").

(CEI Opening Br. at 44.)

> Here, CEI specifically alleged the claims inventive concept: use of a trace route to determine segmentation of data and develop a dynamic P2P network.

(CEI Opening Br. at 46.)

> The Amended Complaint alleges the reason for allowance, a novel, non-obvious use of trace routes.

(CEI Opening Br. at 47.)

> The claims teach an improved dynamic P2P network using trace routes to segment content.

(CEI Opening Br. at 50.) As shown, the *entire* premise of CEI's appeal is that the '452 patent claims patent eligible subject matter because its claims include the "inventive concept" of segmenting content based on a trace route.

Yet, it is entirely irrelevant whether content is segmented based on a trace route because ***no claim in the '452 patent claims that***, and it is the claims of a patent that are the focus of the patentability analysis under 35 U.S.C. § 101. *Content Extraction,* 776 F.3d at 1346 (Fed. Cir. 2014) ("We focus here on whether the *claims* of the asserted patent fall within the excluded category of abstract ideas.") (emphasis original); *Intellectual Ventures,* 838 F.3d at 1332 (Fed. Cir. 2016) ("The district court erred in relying on technological details set forth in the patent's specification and not set forth in the claims to find an inventive concept.").

Instead, each independent claim (and therefore every claim) in the ’452 patent includes the following limitation:

> wherein content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin and other server side scheduling/resource allocation techniques.

(Appx036, 10:49-54 (independent claim 1); Appx037, 11:14-20 (independent claim 5).) The ’452 patent specification says the same thing. (Appx034, 5:49-56 (“segmentation based on CDN address resolution, trace route to CDN and the P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin, other server side scheduling/resource allocation techniques, and combinations thereof.”).) Thus, contrary to the *entire* premise of CEI’s Opening Brief, the ’452 patent claims segmenting data based—not merely on a trace route but—on any “server side scheduling/resource allocation technique”.

The district court noted and held the same thing, stating:

> As for CEI’s argument that ‘the patentee took an existing tool—trace[]routes used to test the pathway between and among nodes—and used that existing tool to make something new’ by using trace routes to ‘perform the content segmentation, [Appx229], that contention is inconsistent with the plain language of the patent itself. Neither the specification nor the independent claims rely *solely* on trace routes to accomplish the purpose of transmitting and delivering segmented content among peers.

(Appx013, citing ’452 patent claims 1 and 5.) The district court further correctly noted that the Patent Office said the same thing when allowing the ’452 patent claims. (Appx013-014 (“allowing the ’452 patent to issue over a rejection under 35 U.S.C. § 103 because….‘the the content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin and other server side scheduling/resource allocation techniques’”.).)

While claim 1 (but not claim 5) states that the content delivery server computer is “operable to” use (*i.e.,* capable of using) the trace route to segment requested content, there is nothing remarkable about that since even CEI does not deny that any general purpose server computer is capable of doing that. (Appx036, 10:49-54 (claim 1); Appx037, 11:14-20 (claim 5). More importantly, when it comes to actually segmenting the content, both claims 1 and 5 are expressly *not* limited to segmenting based on a trace route, as CEI relies for the *entirety* of its appeal. Instead, every claim is directed to segmenting the content based on any server side scheduling/resource allocation technique. (Appx036, 10:49-54 (claim 1) (“wherein content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin *and other server side*

*scheduling/resource allocation techniques*") (emphasis added); Appx037, 11:14-20 (claim 5) (same).)

Accordingly, the *entire* premise of CEI's appeal is a fallacy and should be dismissed for that reason alone.

## V. THE '452 PATENT FAILS TO CLAIM PATENTABLE SUBJECT MATTER

### A. *Alice* Step One

At step one of the *Alice* framework, the Court "look[s] at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). Courts are cautioned to not over-generalize claims, otherwise "all inventions can be reduced to underlying principles of nature." *Diamond v. Diehr*, 450 U.S. 175, 189 n.12 (1981). On the other hand, the judicial inquiry should root out "creative drafting efforts" designed to "monopolize" the abstract idea. *See Alice*, 573 U.S. at 221.

Here, "[i]n cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool.'" *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)). Merely stating an "improved result" to an

otherwise abstract idea is insufficient; the patent must recite a "specific means or method that solves a problem in an existing technological process." *Koninkliijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019). Accordingly, the relevant inquiry is what problem the patent claims to solve and whether the patent specifically asserts a method to make improvements in computer capabilities. *Uniloc USA, Inc. v. LG Electronics USA, Inc.,* 957 F.3d 1303, 1306-07 (Fed. Cir. 2020).

### 1. The district court's proper analysis

The district court correctly found that the focus of the '452 patent claims is "the preparation and transmission of content to peers through a computer network". (Appx006, citing Appx033, 4:28-65.) As the district court reasoned, the claimed preparation of data consists of segmentation. (*Id.*) The transmitted content may include photos, video, game and social media content, and large data files in general. (*Id.*, citing Appx033, 4:36-40, 4:50-52, and Appx036, 9:23-40.) The specification also describes storing data and database processing. (*Id.*, citing Appx036, 9:30-33 ("Additionally, it is possible to use peer nodes for distributed storage as well as additional (game-based/social network) database processing.").) According to the specification, the '452 patent "provide[s] more efficient and reduced cost of delivery for the content" transmitted through the P2P network, as well as "increased reliability, more redundancy, and more efficient delivery than

those of the prior art." (*Id.*, citing Appx033, 4:49-50 and Appx034, 5:28-30.) As the district court further noted, "CEI sums up the '452 patent as 'a better way of content sharing.'" (Appx006, citing Appx228.)

The district court further correctly noted that preparation and transmission of data over a computer network—such as that claimed by the '452 patent—is an abstract idea that courts, including this Court, have consistently found to be patent-ineligible. As the district court stated:

> [C]ourts have previously found that patents involving the transformation and transmission of information in one form or another form constituted abstract ideas." *Easyweb Innovations, LLC v. Twitter, Inc.*, No. 11-cv-4550-JFB-SIL, 2016 WL 1253674, at *28 (E.D.N.Y. Mar. 30, 2016) (listing cases); *see also Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1329 (Fed. Cir. 2017) ("sending and receiving information" over a network are "routine computer functions"); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016) (finding the receipt of e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization (*i.e.,* filtering files/e-mail) to be abstract ideas); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (finding that "receiv[ing] and send[ing] the information over a network" is generic); *VideoShare, LLC v. Google, Inc.*, No. 13-cv-990 (GMS), 2016 WL 4137524 (D. Del. Aug. 2, 2016) (finding invalid under § 101 patent claims directed to preparing a video in streaming video format for sharing over a computer network), aff'd 695 F. App'x 577 (Fed. Cir. 2017).

(Appx006.) In addition to the district court's citations, this Court's precedent is replete with decisions finding patent claims—like those here directed to collecting, analyzing, and displaying data—unpatentable due to their abstract nature.

In *Berkheimer* the Court affirmed the district court's summary judgment of invalidity because the patent claims were directed to the abstract idea of "parsing and comparing data," "parsing, comparing, and storing data," and "parsing, comparing, storing, and editing data". 881 F.3d 1360, 1366 (Fed. Cir. 2018). In *Content Extraction,* the Court affirmed a Rule 12(b)(6) dismissal of patent claims directed to the abstract idea of "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory." 776 F.3d 1343, 1347 (Fed. Cir. 2014).

In *In re TLI,* the Court affirmed a Rule 12(b)(6) dismissal of patent claims directed to the abstract idea of using conventional computer components to implement the abstract idea of "classifying and storing digital images in an organized manner." 823 F.3d 607, 613 (Fed. Cir. 2016). In *Elec. Power Group*, the Court affirmed the district court's summary judgment of invalidity because the patent claims were directed to the abstract idea of "gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions". 830 F.3d 1350, 1354 (Fed. Cir. 2016).

In *Two-Way Media*, the Court affirmed the district court's judgment on the pleadings of invalidity because the patent claims were directed to the abstract idea of routing information using result-based functional language, including

"converting," "controlling," "monitoring," and "accumulating records," but failed to sufficiently describe how to achieve those results in a non-abstract way. 874 F.3d 1329, 1337 (Fed. Cir. 2017). In *Intellectual Ventures I*, the Court affirmed the district court's summary judgment of invalidity because the patent claims were directed to an abstract idea "consisting of nothing more tha[n] the entry of data into a computer database, the breakdown and organization of that entered data according to some criteria…and the transmission of information derived from that entered data to a computer user, all through the use of conventional computer components, such as a database and processors, operating in a conventional manner." 792 F.3d 1363, 1371 (Fed. Cir. 2015).

Here, as the district court correctly held, the '452 patent does no more than recite (1) the mere manipulation of data through segmenting, and (2) the basic computer functions of storing, checking, requesting, and transmitting data. (Appx007, citing Appx036, 10:42-45 and Appx037, 11:12-25.) Indeed, as the district court noted without any challenge from CEI, if all generic computer-implemented steps were stripped from the claims, all that would be left would be the transmission of segmented portions of information between peers, which a human could easily perform—for example, students providing each other with photocopied chapters of a textbook instead of each student obtaining the textbook from the bookstore. (Appx007, citing *Symantec*, 838 F.3d at 1318 (holding that

claims were directed to an abstract concept because, "with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper").)

The district court further correctly noted that, at *Alice* step one, a court broadly construes a patent's purpose and asks what problem the patent seeks to resolve. (Appx007.) In this regard, the district court noted that CEI asserted that claims 1 and 5 are "directed to a specific way that improves the legacy P2P networks," but as the district court then noted, CEI's arguments appeared to be directed more to whether the patent contains an inventive concept. (Appx007, citing Appx229 ("[T]he patentee took an existing tool—trace[ ]routes used to test the pathway between and among nodes—and used that existing tool to make something new" by using trace routes to "perform the content segmentation"; "the patentee taught those of ordinary skill in the art how to manipulate the prior art systems in a new, unexpected way…"). The district court correctly noted the '452 patent does not otherwise identify any particular shortcoming that it is intended to address. (Appx007-008.)

As the district court also noted, CEI suggested—without any supporting evidence—that the '452 patent claims solve an unspecified "problem of capacity

where the prior art P2P systems had failed." (Appx008, citing Appx219 and Appx225.) The district court correctly responded as follows:

> '[C]apacity' is not described anywhere in the specification as a problem that the purported invention is meant to overcome. 'Capacity' is mentioned exactly twice in the specification: once in describing a prior art patent, and once in describing aggregate use of the collective peer nodes. [Appx033, 3:17-28] (describing patent for 'method for streaming multimedia content' that 'advantageously offload[s]' tasks preparatory to streaming 'to the client side and distributed among [user multimedia devices], to realize reduced bandwidth and delay and to conserve on storage capacity of a UMD'); [Appx036, 9:54-63] ('The systems and methods of the present invention provide for harnessing the content recipient devices to aggregate or assemble intelligent functionality of the devices unassociated with the content receipt, including but not limited to computational storage and processing capacity of the content recipient devices in the P2P dynamic network….'). The latter reference concerns the capacity of the individual devices receiving transmitted data, not the capacity of the network.

(Appx008.)

CEI's present argument that the district court misconstrued the "capacity" issue (CEI Opening Br. at 27) lacks merit at least since the district court indicated that issue did not affect its decision. Specifically, the district court stated:

> Even if CEI were correct in that the '452 patent 'improves the legacy P2P networks' by solving a 'problem of capacity,' both CEI and the '452 patent fail to explain *how* this purported improvement is accomplished. The patent does not disclose any algorithm or special programming or any special technology beyond standard, generic computing equipment already disclosed in prior art. *See* [Appx032, 1:17-20] ("Generally, it is known in the relevant prior art to provide peer-to-peer (P2P) networks via the internet for sharing digital content, including video, for live streaming service over content distribution networks (CDNs)."); [Appx034, 5:11-14] ("the

> embodiments of the present invention described herein assume the use of existing audio and/or video playback"); *id.*, 5:59-67 ("[T]he systems and methods of the present invention may be integrated with applications (Apps) for mobile devices, including but no limited to smart phones, tablet computers, mobile computers, mobile communication devices, and the like, and combinations thereof. However, no customized or proprietary software download to the peer node content recipient devices is required for the systems and methods of the present invention.").

(Appx008.) CEI notably fails to acknowledge that aspect of the district court's analysis when seeking to establish an "error" in connection with something the district court expressly did not even rely on.

The district court also correctly noted, without challenge from CEI, that in terms of computer equipment, claims 1 and 5 require nothing more than a "content delivery server computer constructed and configured for electrical connection and communication via at least one communications network" and a P2P "dynamic network including a multiplicity of peer nodes construed and configured for electronic communication" over the network. (Appx008-009, citing Appx036, 10:27-31, 10:64–11:4.) Indeed, the district court noted that CEI did not (nor does it now) dispute that the content delivery server computer could be any computer capable of performing the above functions, or that the peer nodes could be any computer or device connected to a P2P network. (Appx009.)

The district court further correctly noted that claims 1 and 5 merely use results-based functional language: claim 1 claims a system with a server computer

capable of performing basic computing functions (storing data, checking data, preparing or segmenting data, identifying peer nodes, and delivering content) and a P2P network with peer nodes that consume common content within a predetermined time. (Appx009.) Claim 5 parrots claim 1's system in method form, with the additional step of automatically identifying a peer node in close proximity to the client, which shares at least one segment of the requested data with the client. (*Id.*)

As the district court noted, again without dispute from CEI, when claims recite purely functional language and use conventional technology in a typical manner, the claims are not patent eligible. *Two-Way Media*, 874 F.3d at 1337 (Fed. Cir. 2017) (holding that claim is directed to an abstract concept at step one because it "recites a method for routing information using result-based functional language," such as "converting," "routing," "controlling," "monitoring," and "accumulating records," but it "does not sufficiently describe how to achieve these results in a non-abstract way"); *In re TLI*, 823 F.3d at 612 (Fed. Cir. 2016) (finding claims abstract where the "specification fails to provide any technical details for the tangible components" and "instead predominately describes the system and methods in purely functional terms"); *Affinity Labs*, 838 F.3d at 1257 (holding that claim is abstract at step one because "it claims the general concept of out-of-region

delivery of broadcast content through the use of conventional devices, without offering any technological means of effecting that concept").

Accordingly, the district court correctly concluded that "[b]ecause the '452 patent merely states an improved result to an abstract idea without reciting a 'specific means or method that solves a problem in an existing technological process,' *Koninkliijke*, 942 F.3d at 1150, the claims are not patent eligible" at step one of the *Alice* framework. (Appx009-010.)

**2. CEI's erroneous analysis**

CEI's critique of the district's court's *Alice* "step one" analysis advances a series of irrelevant and/or legally erroneous arguments that fail to warrant reversal. (CEI Opening Br. at 17-37.) CEI summarizes its "step one" arguments as follows:

> The district court failed to accept CEI's specific pleadings in its Amended Complaint (1) that the patent was presumed valid, (2) that the advantages plead and set forth in the specification were really advantages, (3) that claim 1 specifically claimed a dynamic P2P network based on a trace route, which was not abstract, (4) that the same specifically claimed P2P network contained an inventive concept, and (5) that the inventors' JoosyCloud system embodied the claims of the invention, exemplifying actual reduction to practice.

(CEI Opening Br. at 17.)

As an initial matter, the Court is not required to accept as true legal conclusions or issues irrelevant to the § 101 analysis. *Ashcroft,* 556 U.S. at 678 (2009) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal quotation marks omitted); *In re Bill of Lading*

*Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1332 (Fed. Cir. 2012). With that in mind, and taking CEI's arguments in order, the statutory presumption of patent validity (whether pled or not) does not preclude a district court from finding that the '452 patent claims are directed to ineligible subject matter, nor does CEI cite any authority to the contrary. Indeed, this Court's precedent is replete with cases affirming a district court's finding (whether pursuant to Fed. R. Civ. P. 12, on summary judgment, or otherwise) of invalidity under 35 U.S.C. § 101. *See, e.g., Genetic Techs.,* 818 F.3d at 1373-74 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."); *Cleveland Clinic*, 859 F.3d at 1360 (Fed. Cir. 2017); *OIP Techs.,* 788 F.3d at 1362 (Fed. Cir. 2015).

CEI's second argument that the district court failed to accept CEI's pleadings regarding advantages allegedly described in the '452 patent *specification* is irrelevant since CEI does not even contend—much less demonstrate—that such advantages arise from the subject matter as *claimed*. *Content Extraction,* 776 F.3d at 1346 (Fed. Cir. 2014) ("We focus here on whether the *claims* of the asserted patent fall within the excluded category of abstract ideas.") (emphasis original); *Intellectual Ventures,* 838 F.3d at 1332 (Fed. Cir. 2016) ("The district court erred in relying on technological details set forth in the patent's specification and not set

forth in the claims to find and inventive concept."); *Chamberlain Grp., Inc. v. Techtronic Indus. Co.,* 935 F.3d 1341, 1346 (Fed. Cir. 2019) ("[W]hile the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus." (citation omitted)); CEI Opening Br. at 21 ("*Alice* Step One requires analysis of the patent's claims." (citing *Alice* and *Mentone Solutions LLC v. Digi Int'l, Inc.,* 21-1202, Slip Op. at 7 (Fed. Cir. Nov. 11, 2021)).

CEI's third and fourth arguments—that claim 1 claims a dynamic P2P network based on a trace route, and that the same specifically claimed P2P network contained an inventive concept (CEI Opening Br. at 21-37)—errs for the reasons identified above*, i.e.,* CEI's characterization of the claims errs because no claim is limited to segmentation based on a trace route. (*Supra* at 16-23.) Specifically, CEI repeatedly argues that:

> [T]he claims are not directed to merely segmentation, but rather to segmentation based on the trace route: 'use the trace route to segment requested content…Appx036, 10:44-45. This was the reason the patent office allowed the patent.

(CEI Opening Br. at 22-23; *id.* at 25, 32-37.) Neither statement is true, as the '452 patent shows. Every claim irrefutably requires segmenting content based—not merely on a trace route but—on "any server side scheduling/resource allocation technique". (Appx036, 10:49-54 (claim 1) ("wherein content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager,

dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin *and other server side scheduling/resource allocation techniques*") (emphasis added); Appx037, 11:14-20 (claim 5) (same); Appx034, 5:49-56 (specification) (same); Appx013-014 (Patent Office) (same).) Accordingly, the district court was not obligated to (nor did it) accept as true CEI's rewrite of the '452 patent claims. (Appx013 (CEI's "contention is inconsistent with the plain language of the patent itself").) *Cellspin Soft, Inc. v. Fitbit, Inc.,* 927 F.3d 1306, 1317 (Fed. Cir. 2019) ("we do not read *Aatrix* to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss").

CEI's fifth argument that "the inventors' JoosyCloud system embodied the claims of the invention, exemplifying actual reduction to practice" is irrelevant, even if true. (CEI Opening Br. at 17.) *Ariosa Diagnostics, Inc. v. Sequenom, Inc.,* 788 F.3d 1371, 1380 (Fed. Cir. 2015) ("even such valuable contributions can fall short of statutory patentable subject matter"); *SAP America, Inc. v. Investpic, LLC,* 898 F.3d 1161, 1170 (Fed. Cir. 2018) ("Under the principles developed in interpreting § 101, patent law does not protect such claims, without more, no matter how groundbreaking the advance.").

Moreover, notably missing from any of CEI's protestations is any distinguishing of the fact that the '452 patent claims do nothing more than call for

a content delivery server that segments data and then distributes that segmented data to a particular network of P2P nodes. As the district court correctly concluded (Appx006-010), it is self-evident from the claim language itself (as informed by the patent specification) that the focus of the claims is not on any specific improvement in computer functionality but rather on a process that qualifies as an abstract idea (*i.e.,* "the preparation and transmission of content to peers" (Appx006)) for which computers are invoked merely as a tool. *BSG Tech. LLC v. BuySeasons, Inc.,* 899 F.3d 1281, 1286 (Fed. Cir. 2018) ("We must, therefore, consider whether the 'focus of the claims' is on a 'specific asserted improvement in computer capabilities..., or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.").[2]

---

[2]*See also, Univ. of Florida Rsch. Found., Inc. v. Gen. Elec. Co.,* 916 F.3d 1363, 1368 (Fed. Cir. 2019) ("The '251 patent 'fails to provide any technical details for the tangible components,... instead predominately describ[ing] the system and methods in purely functional terms."); *Uniloc USA, Inc.,* 957 F.3d 1303, 1306-07 (Fed. Cir. 2020) ("In cases involving software innovations, this inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool."); *Customedia Techs., LLC v. Dish Network Corp.,* 951 F.3d 1359, 1364-65 (Fed. Cir. 2020) (The only improvements identified in the specification are generic speed and efficiency improvements inherent in applying the use of a computer to any task. Therefore, the claimed invention is at most an improvement to the abstract concept of targeted advertising wherein a computer is merely used as a tool. This is not an improvement in the functioning of the computer itself."); *Ericsson, Inc. v. TCL Comm'n Tech. Holdings Ltd.,* 955 F.3d 1317, 1326 (Fed. Cir. 2020) ("Based on the claim language, we conclude that claims 1 and 5 are directed to the abstract idea of controlling access to, or limiting permission to, resources. Although written in

While the ’452 patent claims require that the data be segmented based on any “server side scheduling/resource allocation techniques,” that generic fact fails to make the claims any less abstract, an issue CEI conspicuously does not dispute. Instead, CEI seeks to (erroneously) recast the claims to require segmentation based on a trace route, which it argues is somehow novel. As explained above, not only is that *not* what the claims say (*supra* at 16-23), but the alleged novelty of that subject matter is irrelevant under *Alice* step one. *Cardionet, LLC v. InfoBionic, Inc.,* 955 F.3d 1358, 1372 (Fed. Cir. 2020) (“The analysis under *Alice* step one is whether the claims as a whole are ‘directed to’ an abstract idea, regardless of whether the prior art demonstrates that the idea or other aspects of the claim are known, unknown, conventional, unconventional, routine, or not routine. *See Diamond v. Diehr,* 450 U.S. 175, 188-89, 101 S. Ct. 1048, 67 L.Ed.2d 155 (1981) (“The ‘novelty’ of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter.”); *Am. Axle & Mfg., Inc.*

---

technical jargon, a close analysis of the claims reveals that they require nothing more than this abstract idea.”); *Intellectual Ventures I,* 838 F.3d 1307, 1319 (Fed. Cir. 2016) (using conventional software to implement abstract idea); *RecogniCorp, LLC v. Nintendo of Am., Inc.,* 855 F.3d 1322, 1326 (Fed. Cir. 2017) (using computer to perform standard encoding and decoding of data is abstract); *Affinity Labs*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (“While independent claim 1 refers to general components such as a cellular telephone, a graphical user interface, and a downloadable application, the claimed invention is entirely functional in nature.”).

*v. Neapco Holdings LLC,* 939 F.3d 1355, 1362 n.3 (Fed. Cir. 2019) ("[I]t makes no difference to the section 101 analysis whether the use of [ineligible subject matter] was known in the prior art."); *Data Engine,* 906 F.3d at 1011 ("The eligibility question is not whether anyone has ever used tabs to organize information. That question is reserved for §§ 102 and 103. The question of abstraction is whether the claim is 'directed to' the abstract idea itself.").").

Accordingly, the entirety of CEI's analysis of *Alice* "step one" is either irrelevant or expressly contradicted by the '452 patent claims, the '452 patent specification, and/or statements made by the Patent Office about the '452 patent claims.

### B. *Alice* Step Two

At step two of the *Alice* framework, the Court examines the elements of the claims, both individually and "as an ordered combination" to determine if they contain an "inventive step" sufficient to "transform" the claimed abstract idea into a patent-eligible application. *Alice*, 573 U.S. at 221 (citing *Mayo*, 556 U.S. at 78–79). Step two is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347–48 (quoting *Alice*, 573 U.S. at 225); *see also TLI Commc'ns*, 823 F.3d at 613 ("It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea."). "If a claim's only 'inventive concept' is

the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech*, 899 F.3d at 1290–91 (Fed. Cir. 2018).

#### 1. The district court's proper analysis

The district court first noted that CEI argued the '452 patent's inventive concept is the "use [of] trace[ ]routes to identify common content that will be consumed by the peers and then segmenting and distributing the content based on the trace[ ]route." (Appx010, citing Appx228.) This district court further noted that elsewhere in CEI's opposition brief CEI described the purported inventive concept as "segmenting content in a virtual P2P network using the tools of the CDN on the backend." (Appx010, citing Appx230 and Appx231 (citing paragraphs 12 and 13 of the complaint for the assertion that "the amended complaint specifically alleges that the '452 patent discloses an 'inventive concept' that was recognized and subsequently upheld by the U.S. PTO").) The district court further noted that CEI argued that the patent examiner's finding that this purported inventive concept was lacking in the prior art is "presumed correct" and because CEI so pled in its complaint, that allegation "should be accepted by the Court as true at the pleading stage." (Appx010, citing Appx228.)

The district court properly responded as follows:

> While an issued patent is generally entitled to a presumption of validity, 35 U.S.C. § 282(a), the Court is not required to 'assume the

> truth of legal conclusions merely because they are cast in the form of factual allegations.' *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal quotation marks omitted); *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1332 (Fed. Cir. 2012). Courts can and do regularly assess a patent's validity under § 101 at the pleading stage. *See, e.g.*, *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352 (Fed. Cir. 2017) ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced.").

(Appx010-011.)

The district court then distinguished the two cases CEI principally relied on in support of its argument that its amended complaint adequately alleged that the '452 patent discloses an inventive concept, namely *Aatrix Software*, 882 F.3d 1121 (Fed. Cir. 2018) and *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016). (Appx011, citing Appx230-231.) Regarding *Aatrix*, the district court held:

> In *Aatrix*, the Federal Circuit held that the district court erred in determining that the disputed claim of the patent-in-suit was ineligible solely because it was directed to an intangible embodiment. The Federal Circuit further held that 'patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6).' *Id.* at 1126–27. Aatrix's complaint included numerous allegations related to the inventive concepts in the claimed technology, including a description of 'the development of the patented invention,' 'the problems present in prior art,' and 'specific allegations directed to 'improvements and problems solved by the Aatrix patented inventions.'' *Id.* at 1127. In contrast, CEI's allegations do not contain a comparable level of detail and are not similarly well-pled, as they are not grounded in the patent

> specification or file history. The amended complaint does not provide a description of the development of the patented invention, other than to describe the named inventors and original assignee of the patent. [Appx044 at 2.] The amended complaint identifies 'capacity' as a problem in P2P network sharing, *id.* at 2 and ¶ 24, but as discussed above, the patent itself does not identify any problem it is intended to solve, much less the problem of capacity. *See supra* Section III.A. Finally, paragraph 13 of the complaint refers to the benefits of the purported invention, which consists of 'sav[ing] time, improv[ing] redundancy, and also reduc[ing] or eliminat[ing] costs,' as well as 'creat[ing] more efficient content delivery….' [Appx046 at ¶ 13 (quoting [Appx034, 5:38-48].] These benefits amount to nothing more than improved efficiency, not an inventive concept. 'An improved result, without more stated in the claim, is not enough to confer eligibility to an otherwise abstract idea.' *Koninkliijke*, 942 F.3d at 1150.

(Appx011-012.)

Regarding *BASCOM*, the district court held:

> [T]he Federal Circuit held that the patent-in-suit directed to filtering content on the Internet was not ineligible under § 101 because it claimed 'a technology-based solution (not an abstract-idea-based solution implemented with generic technical components in a conventional way) to filter content on the Internet that overcomes existing problems with other Internet filtering systems.' 827 F.3d at 1351. As discussed above, the '452 patent does not disclose any particular problem that it is intended to solve, and it merely implements the abstract idea of preparing and transmitting data over a computer network with generic computer components using conventional technology. *See Erie Indem. Co.*, 850 F.3d at 1329 ("sending and receiving information" over a network are "routine computer functions"); *Alacritech, Inc. v. Intel Corp.*, 817 F. App'x 995 (Fed. Cir. 2020) (discussing patentability of patents issued in 2007, 2008, and 2010 that concerned dividing data in segments for transmission, and describing prior art from 1981 teaching a TCP protocol that segmented data into separate packets for transmission). As the *BASCOM* court noted, claims like claims 1 and 5 of the '452 patent that 'merely recite the abstract idea…along with the

> requirement to perform it on….a set of generic computer components' do not contain an inventive concept. *Id.* 1350. 'An inventive concept…cannot simply be an instruction to implement or apply the abstract idea on a computer.' *Id.* at 1349.

(Appx012.) The district court also correctly noted that CEI's arguments concerning novelty were "not persuasive, as novelty does not necessarily transform an abstract idea into a patentable one." (Appx012-013, citing *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) and *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).)

The district court then addressed the ongoing fallacy underlying CEI's appeal*, i.e.,* as the district court stated it: "CEI's argument that 'the patentee took an existing tool—trace[]routes used to test the pathway between and among nodes—and used that existing tool to make something new' by using trace routes to 'perform the content segmentation,'". (Appx013, citing Appx229.) Specifically, relying on the '452 patent specification, claims, and comments by the Patent Office, the district court correctly held that:

> [CEI's] contention is inconsistent with the plain language of the patent itself. Neither the specification nor the independent claims rely *solely* on trace routes to accomplish the purpose of transmitting and delivering segmented content among peers. [Appx034, 5:49-56] ("Factors for balancing or managing distribution of the P2P content delivery over dynamic networks associated with the present invention include segmentation based on CDN address resolution, trace route to CDN and the P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin, other server side scheduling/resource allocation techniques, and combinations thereof."); *id.* at claim 1 (claiming

> distribution of P2P content delivery based on content segmentation, "wherein content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin and other server side scheduling/resource allocation techniques"); *id.* at claim 5 (claiming "at least one content delivery server computer segmenting requested content based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin, and other server side scheduling/resource allocation techniques"); *see also* [Appx238 at 1] (allowing the '452 patent to issue over a rejection under 35 U.S.C. § 103 because "the prior arts of record, failed to disclose or suggest that the multiplicity of peer nodes of the dynamic peer-to-peer network consume the same content within a predetermined time and that the distribution of P2P content delivery is based on content segmentation and the content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin, and other server side scheduling/resource allocation techniques"). CEI's assertion that 'the patentee taught those of ordinary skill in the art how to manipulate the prior art systems in a new, unexpected way: using the means of testing the pathways instead as a means to distribute data in a virtual network outside the control of the CDN' is not supported by the portion of the specification CEI cites for that proposition, which says nothing at all about trace routes. *Compare* [Appx229-230] *with* [Appx034, 5:38-48].

(Appx013-014.)

The district court then noted that "[a]ll that is left of claims 1 and 5 beyond the abstract idea of preparing and transmitting data using the conventional technology and methods of generic computers, a P2P network, and segmentation of data for transmission is the consumption of common content by peers at the same time and claim 5's automatic identification of a peer node in close proximity to the

client requesting data." (Appx014.) The district court then explained in detail—without any current challenge from CEI—why that fails to render the claims patentable, holding:

> [T]he '452 patent does not explain *how* either of these results are accomplished; it simply states that it is. [Appx033, 4:52-58 ("The content recipients have a peerness established and/or defined by the common content they are receiving from the CDN server; the systems and methods automatically identify peer nodes receiving common content and create dynamic network communication connection for the peer nodes to transmit that common content to each other . . . .")]; *id.* at 5:44-48 ("The content delivery server further identifies those peer nodes that are in close network proximity to each other and uses them to distribute content to each other to create more efficient content delivery thereby."). The patent repeatedly states that 'the peerness of the peer nodes is defined by their common content,' *see, e.g.*, *id.* at 6:46-63, but there is no explanation in the specification or the claims of how the content delivery server computer or a peer node would recognize that other peer nodes are consuming the same content. Similarly, the specification broadly asserts:
>
>> While proximity of physical location is important, it is primarily the network proximity or network distance that is also used to determine the dynamic P2P networks among peer nodes, based upon the network routing required. Groups are preferably within the same subnetwork of an internet service provider (ISP) for the nodes. Also, load balancing is a factor considered in determining the dynamic P2P networks. A content delivery network where the video content originates includes a series of servers; preferably, the closest network distance to those is included in the dynamic P2P networks.
>
> *Id.* at 6:20-30. The patent does not explain how the content delivery server computer or a peer node transmitting data would recognize other nodes in close network proximity.

(Appx014-015.) CEI's appeal never addresses these issues, much less the rationale for the district court's conclusion that:

> Such results-based claims using only conventional technology do not render claims patent-eligible. *See Affinity Labs*, 838 F.3d at 1263 (holding that claim is not patent-eligible at step two because "it does not provide an inventive solution to a problem in implementing the idea of remote delivery of regional broadcasting; it simply recites that the abstract idea of remote delivery will be implemented using the conventional components and functions generic to cellular telephones"); *Alice*, 573 U.S. at 223 (holding that reciting an abstract idea "while adding the words 'apply it'" is not enough for patent eligibility at step two) (citation omitted).

(Appx015.) Accordingly, the district court correctly concluded that "the '452 patent lacks an inventive concept at step two and is patent-ineligible under § 101." (Appx015.)

### 2. CEI's erroneous analysis

CEI begins its *Alice* "step two" analysis with the same legal error it started its "step one" analysis*, i.e.,* erroneously asserting that the allegations in its amended complaint (to the effect that the '452 patent is presumed valid and that the Patent Office issued the patent over prior art) somehow defeat the district court's ability to invalidate the patent pursuant to Fed. R. Civ. P. 12. (CEI Opening Br. at 38.) Again, that is not the law as this Court has repeatedly held. (*Supra* at 15-16, citing cases.)

Next, CEI complains the district court improperly "weighed" the alleged merits of CEI's amended complaint, instead of simply taking them as true. (CEI

Opening Br. at 39-41.) CEI cites paragraphs 10-12 of the amended complaint and concludes the ’452 patent claims include an inventive concept because CEI says they do. (*Id*. at 39.) But as the district court discussed at length (Appx010-012), it was “not required to assume the truth of legal conclusions merely because they are cast in the form of factual allegations.” (Appx011, citing *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curium); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (“[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.”); *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1332 (Fed. Cir. 2012).)

CEI next criticizes the district court for allegedly holding that the ’452 patent claims “rely ***solely*** on trace routes to accomplish the purpose of transmitting and delivering segmented content among peers.” (CEI Opening Br. at 41 (emphasis original).) CEI’s argument conflates the district court’s explanation with CEI’s argument. Specifically, it was CEI that repeatedly argued to the district court (and again to this Court) that the inventive concept of the ’452 patent is that “the patentee took an existing tool—traceroutes (sic) used to test the pathway between and among nodes—and used that existing tool to make something new” by using trace routes to “perform the content segmentation”. (Appx229; *see also* CEI Opening Br. at 1-2, 15-16, 18-19, 21-22, 25-26, 32-33, 35, 38, 39, 41, 44, 46, 47, and 50.) The district court disagreed because CEI’s contention directly

contradicts the ’452 patent specification, claims, and statements by the Patent Office, all of which expressly show the invention is *not* limited to segmenting data based solely on trace routes. (Appx013-014.) Thus, contrary to CEI’s current argument, it was CEI—not the district court—that argued (incorrectly) that the inventive concept was segmenting data based solely on trace routes.

Next, CEI complains the district court improperly consulted the ’452 patent specification in its § 101 analysis, alleging that such inquiry constituted a factual analysis under § 112 necessitating the testimony of a person of ordinary skill in the art. (CEI Opening Br. at 43-45.) CEI fails to cite a single supporting case, which is not surprising since the essence of the § 101 analysis itself often necessarily requires reference to the corresponding patent specification to assess (1) whether the claim is directed to a patent-ineligible concept at *Alice* “step one” and (2) whether the claim elements, either individually or as an ordered combination, transform the nature of the claim into a patent-eligible application at *Alice* “step two”. *See e.g., In re TLI,* 823 F.3d at 611-615 (Fed. Cir. 2016) (repeatedly referring to the patent specification at *Alice* step one and step two); *Elec. Power Grp.,* 830 F.3d at 1355 (concluding claims were ineligible under § 101 in part because "[n]othing in the claims, *understood in light of the specification*, requires anything other than off-the-shelf, conventional computer, network, and display

technology for gathering, sending, and presenting the desired information") (emphasis added).

The absence of error in the district court's analysis is further exemplified by the fact that CEI fails to allege, much less explain, how the district court's reference to the '452 patent specification erred. (CEI Opening Br. at 43-45.) CEI only argues that the district court erred in doing so without the aid of a person skilled in the art, not that the court's findings were in any way incorrect. *Affinity Labs,* 838 F.3d at 1270 (Fed. Cir. 2016) (rejecting criticism of conclusion that the claims recited "routine and generic processing and storing capabilities of computers generally" where it was not suggested those elements were new or inventive).

Immediately after accusing the district court of erring by referencing the '452 patent specification, CEI repeatedly cites the specification when arguing "the district court missed the inventive concept because it failed to appreciate the claims' engineering requirements". (CEI Opening Br. at 45-46.) Specifically, CEI alleges that the district court failed to appreciate that

> [t]he at-issue claims offer a virtual, dynamic network, which could, for example, come to being when many devices request the same football game, such as the Bear v. Packer game. Then, this dynamic network disappears once the game is complete. Lost on the district court, these claims use the variable and at times surging, request for the same content as the basis for a new computing platform.

(*Id.* at 46.) The error of CEI's argument is that none of the '452 patent claims claim that alleged inventive concept, nor does CEI allege otherwise. *Intellectual Ventures,* 838 F.3d at 1332 (Fed. Cir. 2016) ("The district court erred in relying on technological details set forth in the patent's specification and not set forth in the claims to find and inventive concept.")

CEI next complains the district court erred by failing to "give weight" to the "factual allegation" in its Amended Complaint that "the reason for allowance [of the '452 patent claims was] a novel, non-obvious use of trace routes". (CEI Opening Br. at 47-48.) That errs for two reasons.

First, the district court specifically considered that allegation and correctly concluded it was expressly contradicted by the '452 patent claims, specification, and prosecution history that CEI cited in support. (Appx013-014.) Contrary to CEI's implication, the district court was not obligated to accept *ipse dixit* everything in CEI's Amended Complaint. Only "well plead, plausible" allegations are accorded such deference. *Ashcroft*, 129 S. Ct. at 1949-50 (2009); *Cellspin,* 927 F.3d at 1317 (Fed. Cir. 2019) ("we do not read *Aatrix* to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss"). Here, CEI's allegation was neither well plead nor plausible, as the district court explained. (Appx013-014.)

Second, whether or not well plead and/or plausible, CEI's argument regarding the novelty and/or non-obviousness of the '452 patent claims is

irrelevant to the § 101 analysis. *Diamond,* 450 U.S. at 189-190 (1981) ("The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter."); *buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1352 (Fed. Cir. 2014) (abstract ideas, "no matter how 'groundbreaking, innovative, or even brilliant,'" fall outside § 101).

Finally, CEI's analysis of *Alice* "step two" is significant for what it does *not* say. Nowhere does CEI argue that any of the claims in the '452 patent set forth anything more than well-understood, routine, conventional activity. *Affinity Labs,* 838 F.3d at 1262 (Fed. Cir. 2016) (the "additional features" required by *Alice* step two "must be more than 'well-understood, routine conventional activity.'"); *see also In re TLI,* 823 F.3d at 614-15 (collecting cases). Nor could it. As the district court correctly noted, the '452 patent claims do nothing more than call for a content delivery server that segments data and then distributes that segmented data to a particular network of P2P nodes. (Appx014.) CEI's argument that the inventive concept was segmenting data based on trace routes errs since the claims actually call for segmenting data based on any "server side scheduling/resource allocation techniques". (Appx036, 10:46-54; Appx037, 11:14-12; *see also supra* at 16-23.) *Intellectual Ventures I,* 838 F.3d at 1315 (Fed. Cir. 2016) ("'claiming the improved speed or efficiency inherent with applying the abstract idea on a computer' does not 'provide a sufficient inventive concept'".).

Nor does CEI deny that the claims are merely functional*, i.e,* the claims say what happens but they fail to set forth any technical means for accomplishing their function. Specifically, as indicated, the claims simply call for a content delivery server computer and a P2P dynamic network, where each has certain functionalities. As this Court held in *Affinity Labs*, that fails *Alice* step two:

> As noted, representative claim 14 is written in largely functional terms, claiming 'a collection of instructions' that perform the functions of displaying a selection of available content on a graphical user interface and allowing the user to request streaming of that content. The claims thus do not go beyond 'stating [the relevant] functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology.'

838 F.3d at 1271 (Fed. Cir. 2016). This Court more recently said the same thing in *Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*:

> Because claim 11 is specified at a high level of generality, is specified in functional terms, and merely invokes well-understood, routine, conventional components and activity to apply the abstract idea identified previously, [] claim 11 fails at step two, *see, e.g., Alice,* 573 U.S. at 225-26, 134 S.Ct. 2347; *Mayo,* 566 U.S. at 73, 132 S.Ct. 1289; *see also, e.g., Elec. Power Grp.,* 830 F.3d at 1355 (concluding patent claims were ineligible under § 101 in part because "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information").

958 F.3d 1178, 1183 (Fed. Cir. 2020).

Here, CEI does not deny that the claimed content delivery server computer and the P2P network are anything but off-the-shelf, conventional computers, nor

could it since the ’452 patent specification says exactly that. (Appx032, 1:17-20; Appx032-033, 1:22-3:34, 3:40-44; Appx034, 5:59-6:5.) That fails to satisfy *Alice* step two. *Univ. of Fl. Rsch. Found.,* 916 F3d at 1369 (Fed. Cir. 2019) (“As *BASCOM* recognized, claims like these that ‘merely recite the abstract idea... along with the requirement to perform it on... a set of generic computer components’ do not contain an inventive concept. 827 F.3d at 1350. ‘An inventive concept... cannot simply be an instruction to implement or apply the abstract idea on a computer.’ *Id.* at 1349.”).

Accordingly, as the district court correctly held, the ’452 patent claims lack an inventive concept at *Alice* step two and they are, therefore, patent-ineligible under § 101.

## VI. THE DISTRICT COURT PROPERLY INVALIDATED ALL THE ’452 PATENT CLAIMS

CEI argues the district court’s decision invalidating all of the ’452 patent claims errs because the district court (1) lacked jurisdiction with respect to claims 4 and 6-15, and (2) failed to specifically consider claims 2-4 and 6-15 in its written decision. (CEI Opening Br. at 48-49.) CEI’s argument errs in both respects.

The premise of CEI’s first argument is that the district court lacked jurisdiction over claims 4 and 6-15 because “CEI only asserted claims 1-3 and 5 in the Amended Complaint”. (CEI Opening Br. at 48.) That is not true. As shown below, the Amended Complaint repeatedly accuses Kollective of infringing

"claims of the '452 patent", and it then goes on to allege that *"[w]ithout limiting the claims that will be asserted*…Kollective is infringing claim 5 of the '452 patent."

> *Infringement of the '452 Patent*
>
> 26. Kollective has been and is directly infringing claims of the '452 patent. Kollective makes, uses, sells, and offers for sale methods and services that practice and embody claims of the '452 patent—including but not limited to Kollective SD ECDN. As discussed below, Kollective infringes the '452 patent, *inter alia*, when Kollective delivers video content for organizations (i.e., Kollective's clients) using Microsoft "Teams" software in conjunction with Kollective's software, firmware, and hardware. In this example, the Kollective application working with the Microsoft software is referred to as the Kollective app.
>
> 27. Without limiting the claims that will be asserted or the products and services that will be accused of infringement in this action, Kollective is infringing Claim 5 of the '452 patent.

(Appx050.) In its Prayer for Relief, CEI again did not limit the claims it was asserting against Kollective, instead requesting "Judgment that Kollective has directly infringed the '452 patent". (Appx059.) Accordingly, CEI's amended complaint put Kollective on notice that it was accused of infringing the '452 patent, without limit to which specific patent claims it would have to defend at trial.

Additional considerations further inform the identity of the patent claims properly subject to Kollective's motion to dismiss. This case was filed in the Northern District of California, which has local patent rules that do not require a

patentee to identify (in a complaint or otherwise) exactly which patent claims it will be asserting against an accused infringer until later in the case*, i.e.,* after the deadline for filing a Rule 12 motion to dismiss. (Rule 3-1, U.S. District Court Northern District of California, Patent Local Rules (Revised November 4, 2020) (Disclosure of Asserted Claims and Infringement Contentions).) This is consistent with precedent in the Northern District of California, which does not require that CEI plead infringement of every claim alleged to be infringed, so long as its pleading with respect to at least one patent claim suffices under the *Iqbal/Twombly* pleading guidelines. *See e.g., Windy City Innovations, LLC v. Microsoft Corp.,* 193 F.Supp.3d 1109, 1115 (N.D. Cal. 2016) (denying motion to dismiss and noting that complete infringement contentions were not due until later under Local Patent Rule 3-1).

Accordingly, when Kollective filed its Rule 12 motion to dismiss, Kollective's motion necessarily addressed every claim (claims 1-15) in the '452 patent since those were the claims Kollective was faced with defending. (Appx080-213.) When responding to Kollective's motion, CEI never complained, objected, or gave any indication it was asserting less than all the claims in the '452 patent, or that the district court somehow lacked jurisdiction over certain claims addressed in Kollective's motion. (Appx214-265.) Indeed, contrary to its current argument that jurisdiction exists only for claims 1-3 and 5, CEI's opposition to

Kollective's motion specifically referenced claims 1, 5, 12, 13, and 14, thereby acknowledging that (1) jurisdiction existed for claims other than claims 1-3 and 5 and (2) that CEI was not opposing Kollective's motion with respect to claims 2-4, 6-11, and 15. (Appx217-218.) *Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1426 (Fed. Cir. 1997) (barring few exceptions, the failure to raise an argument at the trial level constitutes a waiver of that argument on appeal).

Finally, CEI's argument that the district court's decision with respect to claims 2-4 and 6-15 (*i.e.,* the '452 patent's dependent claims) should be reversed because the district court's opinion did not specifically address those claims further ignores this Court's precedent and the practice of district courts across the country when dealing with patentable subject matter issues under 35 U.S.C. § 101. Specifically, CEI fails to tell the Court that Kollective's motion to dismiss expressly advanced the proposition that "[c]laim 1 of the '452 patent is representative of the ['452 patent] claims" and, therefore, all of the '452 patent claims could be invalidated solely on the basis of the district court's analysis of claim 1. (Appx088; Appx094, citing *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.,* No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea.") and *Content Extraction,* 776 F.3d at 1348 (Fed. Cir. 2014)

(Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis.).

While Kollective's motion to dismiss went the extra step of separately analyzing every claim in the '452 patent (Appx093-104), CEI did not then, and does not now, challenge Kollective's argument (supported by this Court's precedent) that the 35 U.S.C. § 101 analysis can be based on representative patent claim 1, as Kollective specifically alleged—unopposed—in its motion to dismiss (Appx088; Appx094). *Berkheimer,* 881 F.3d at 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative."); *Cleveland Clinic,* 859 F.3d 1352, 1358, 1360 (Fed. Cir. 2017) (analyzing representative claims is proper where plaintiff fails to identify and explain why claims are not representative).

Indeed, as shown below, Kollective's reply brief specifically pointed out CEI's failure to oppose that aspect of Kollective's motion to dismiss:

> The Opening Brief explained that remaining Claims 2-15 in the '452 patent relate to the same abstract concept of preparing content for sharing over a computer network. [Appx102-104.] CEI's Opposition does not challenge that analysis or conclusion. Accordingly, Claims 2-15 claim ineligible subject matter for the reasons previously articulated.

(Appx280.) Accordingly, it was within the district court's discretion to invalidate each claim in the '452 patent based on its analysis of representative claims 1 and/or 5, as it did. CEI's complaints to the contrary are both unsubstantiated and waived due to CEI's failure to identify and explain (then or now) why claim 1 (or claim 5) is not representative of all the claims in the '452 patent and/or to otherwise advance any argument regarding the patentability of claims 2-15. *Sage Prods.,* 126 F.3d at 1426 (Fed. Cir. 1997) (the failure to raise an argument at the trial level constitutes a waiver of that argument on appeal).

## VII. CONCLUSION

For the foregoing reasons, Kollective requests that the district court's order be affirmed in all respects.

Dated: January 14, 2022

Respectfully submitted,

/s/ Michael S. Dowler
Michael S. Dowler
Park, Vaughan, Fleming & Dowler LLP
5847 San Felipe, Suite 1700
Houston, TX 77057
(713) 821-1540
mike@parklegal.com

Counsel for Appellee Kollective Technology, Inc.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Circuit Rule 32(a). This brief contains 13,784 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2008 in 14-point Time New Roman.

Dated: January 14, 2022

/s/ Michael Dowler
Michael Dowler
Counsel for Appellee Kollective Technology, Inc.

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on the 14th day of January 2022, an electronic copy of the foregoing Responsive Brief of Appellee was filed with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system and thereby causing a "Notice of Electronic Filing" to be served on all counsel of record.

Dated: January 14, 2022

/s/ Michael Dowler
Michael Dowler
Counsel for Appellee Kollective Technology, Inc.