21-2167

# United States Court of Appeals for the Federal Circuit

**COOPERATIVE ENTERTAINMENT, INC.**,

*Plaintiff-Appellant*

v.

**KOLLECTIVE TECHNOLOGY, INC.,**

*Defendant-Appellee*

Appeal from the United States District Court for the Northern District of California, Case No. 5:20-cv-07273, District Judge Edward J. Davila

**REPLY BRIEF OF APPELLANT COOPERATIVE ENTERTAINMENT, INC.**

Meredith Martin Addy
*(counsel of record)*
**ADDYHART P.C.**
10 Glenlake Parkway, Suite 130
Atlanta, Georgia 30328
meredith@addyhart.com
312.320.4200

Benjamin M. Cappel
**ADDYHART P.C.**
401 North Michigan Avenue, Suite 1200-1
Chicago, Illinois 60611
benjamin@addyhart.com
732.991.7275

Matthew M. Wawrzyn
**Wawrzyn LLC**
200 East Randolph Street
Suite 5100
Chicago, Illinois 60601
matt@wawrzynlaw.com
312.235.3120
312.233.0063 (facsimile)

February 18, 2022

***Attorneys for Appellant Cooperative Entertainment, Inc.***

## CERTIFICATE OF INTEREST

Counsel for Appellant Cooperative Entertainment, Inc. certifies:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Fed. Cir. R. 47.4(a)(1).

    **Cooperative Entertainment, Inc.**

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. Fed. Cir. R. 47.4(a)(2).

    **None.**

3. **Parent Corporations and Stockholders**. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10 percent or more of the stock of the entities:

    **None.**

4. **Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. 4. 47.4(a)(4).

    (a) **Todd Christopher Atkins**
    **Atkins & Davidson, APC**

    (b) **Not applicable**.

5. **Related Cases**. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. See Fed. Cir. R. 47.4(a)(5) and 47.5(b).

    **None.**

6. **Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). See Fed. Cir. R. 47.4(a)(6).

**None/Not Applicable**

Dated: February 18, 2022 By: /s/ *Matthew M. Wawrzyn*
Matthew M. Wawrzyn

## TABLE OF CONTENTS


CERTIFICATE OF INTEREST .......... ii

TABLE OF CONTENTS .......... iv

TABLE OF AUTHORITIES .......... vi

ARGUMENT .......... 1

I. Kollective Rehashes the District Court's Misapplication of *Alice* Step One, and Simultaneously Misrepresents CEI's Arguments .......... 2

A. Kollective Fails to Refute that Claim 1 Satisfies *Alice* Step One .......... 4

1. The District Court's Generalized "Focus" Holding Ignores the Claim Language .......... 4

2. The '452 Patent Provides Structure to Render the New, Dynamic P2P Network, Not Mere Data Manipulation .......... 5

B. Kollective Misrepresents CEI's Positions .......... 8

1. The Court Must Consider the Statutory Presumption of Validity .......... 8

2. CEI Specifically Pled the Asserted Claims' Advantages over the Prior Art .......... 10

3. The Claims Teach "How" the Invention Improves "Capacity" .......... 12

4. Kollective Mischaracterizes the '452 Patent Claims as *Pushing* Content to *Static* P2P Networks .......... 13

5. Claiming Known Structure in Combination Is Not Prohibited by Section 101 .......... 13

II. Kollective's *Alice* Step Two Argument Fails Because the District Court Improperly Weighed Evidence on a Rule 12 Motion .......... 14

A. Kollective's Rehashing of the District Court's Decision Doubles-Down on its Errors .......... 15

B. Kollective's Issues with CEI's Analysis Rely on Incorrect Legal Assumptions .......... 16

1. Kollective Supports the District Court's Faulty *Solely* Determination and Misrepresents CEI's Arguments on Inventive Concept .......... 17

2. Kollective Excuses the District Court's Weighing of the Evidence ........ 20

3. Kollective Misunderstands the §101/§112 Dispute ........ 21

III. Kollective's "Premise Argument" Ignores Settled Doctrine that All Claim Limitations are Required ........ 22

IV. The District Court's Failure to Analyze Non-Asserted and Dependent Claims Requires Remand ........ 24

A. Contrary to Kollective's Arguments, the District Court Did Not do a Representative Claim Analysis ........ 24

1. Kollective's Assertion of Representative Claim Does Not Alleviate the District Court's Burden ........ 25

2. Stating that Additional Claims *May Be* Asserted Does Not Put All Claims at Issue ........ 26

3. Even if One Claim of a Patent Is Infringed, the Patent is Infringed ........ 27

B. Kollective Cannot Cure the District Court's Jurisdictional Flaw ........ 29

CONCLUSION ........ 30

## TABLE OF AUTHORITIES

### Cases

*Aatrix Software, Inc. v. Green Shades Software Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) .......... passim

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
838 F.3d 1266 (Fed. Cir. 2016) .......... 19, 20

*Alcon Res. Ltd. v. Barr Labs., Inc.*,
745 F.3d 1180 (Fed. Cir. 2014) .......... 27

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208, (2013) .......... 2, 4, 5

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) .......... 6, 8, 19

*Cardionet, LLC v. Infobionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020) .......... 1

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019) .......... 9, 11, 18, 20

*Content Extraction and Transmission LLC v. Wells Fargo, Bank Nat'l Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014) .......... 25

*Diamond v. Diehr*, 450 U.S. 175 (1981) .......... 24

*Elec. Commc'ns Techs., LLC v. Shopperschoice.com LLC*,
958 F.3d 1178 (Fed. Cir. 2020) .......... 7

*Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*,
34 F.3d 1048 (Fed. Cir. 1994) .......... 5

*Enfish, LLC v. Microsoft Corp.*,
822 F.2d 1327 (Fed. Cir. 2016) .......... 2

*Genetic Techns. Ltd. v. Merial L.L.C.*,
818 F.3d 1369 (Fed. Cir. 2016) .......... 20

*Hoffer v. Microsoft Corp.*,
405 F.3d 1326 (Fed. Cir. 2005) .......... 23

*In re TLI Commc'ns*,
823 F.3d 612 (Fed. Cir. 2016) .................................................................... 6

*Judd v. Weinstein*,
967 F.3d 952 (9th Cir. 2020) ...................................................................... 9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012) ........................................................................... 16, 24

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) .................................................................. 1

*Microsoft Corp. v. i4i Ltd. P'ship.*,
564 U.S. 91, 97-98 (2011) ..................................................................... 8, 9

*Phoenix Licensing, LLC v. Consumer Cellular, Incorporated*,
No. 2:16-cv-152, Dkt. 349 (E.D. Tex. Mar. 8 2017)................................... 26

*Sage Prods., Inc. v. Devon Indus., Inc.*,
126 F.3d 1420 (Fed. Cir. 1997) ................................................................ 29

*Streck, Inc. v. Res. & Diagnostic Sys., Inc.*,
665 F.3d 1269 (2012) ..................................................................... 26, 29

*SuperGuide Corp. v. DirecTV Enterprises, Inc.*,
358 F.3d 870 (Fed. Cir. 2004) .................................................................. 23

*Thales Visionix Inc. v. United States*,
850 F.3d 1343 (Fed. Cir. 2017) .................................................................. 5

*Two-Way Media, Ltd. v. Comcast Commc'n, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) .................................................................. 6

*Visual Memory LLC v. NVIDIA Corp.*,
867 F.3d 1253 (Fed. Cirl 2017) ................................................................ 11

*Windy City Innovations, LLC v. Microsoft Corp.*,
193 F.Supp. 3d 1109 (N.D. Cal. 2016)........................................................ 28

**Statutes**

35 U.S.C. § 112............................................................................................. 21

35 U.S.C. § 101........................................................................................ passim

35 U.S.C. § 282 ........................................ 8, 9

**Rules**

Federal Rule of Civil Procedure 12 ........................................ passim

## ARGUMENT

Rather than responding to CEI's positions setting forth the district court's error, Kollective adopts whole cloth the district court's erroneous conclusions. Yet, the district courts generalized "focus," untethered to the claims, under *Alice* Step One, combined with its isolation of only part of the claim, instead of looking at the claim as a whole, under *Alice* Step Two cannot be glossed over. Instead, claim 1 of the '452 Patent, when read as a whole, in light of the specification, and the file history, is directed to a specific new way to provide content in a dynamic network. The dynamic P2P network is developed through the claimed use of a trace route — in the opposite direction of the prior art, Appx036; 10:25-45, improving the delivery of video data in a dynamic P2P network, and showing that it does not "merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). That should end the analysis: "the claims satisfy § 101 and we need not proceed to the second step." *Cardionet, LLC v. Infobionic, Inc.*, 955 F.3d 1358, 1371 (Fed. Cir. 2020) (internal quotations and citations omitted).

However, under Step Two, Kollective and the district court improperly require the "inventive concept" to be based "solely" on "segmenting data based on trace routes." While there is no doubt that claim 1 requires trace routes, the law does not require that only a sole concept be the basis for the claim, rather, the claim must

be considered as a whole. Kollective also does not dispute the district court's improper weighing of the evidence of an "inventive concept." However, delving into the merits of the technology on a Rule 12 motion is not the purview of the district court. Claim 1's specific requirements show at least a specific "inventive concept" that, in combination with other limitations "ensures that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2013).

Finally, the district court overreached by invalidating the "'452 Patent" in total, instead of analyzing the specific asserted claims 1, 2, 3, and 5.

This case should be reversed and remanded with instructions that the claims are patent eligible.

## I. Kollective Rehashes the District Court's Misapplication of *Alice* Step One, and Simultaneously Misrepresents CEI's Arguments

*Alice* Step One requires the Court to "determine whether the claims at issue are directed to one of those patent-ineligible concepts" *i.e.,* laws of nature, natural phenomena, and abstract ideas. *Alice*, 573 U.S. at 217. This threshold test asks if the "claims, considered in light of the specification, based on whether their character as a whole is directed to excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.2d 1327, 1335 (Fed. Cir. 2016) (internal citations and quotations omitted). Despite a decade of Supreme Court and Federal Circuit precedent, the district court

and Kollective curiously bypass the claim language and instead extract one statement from the specification touting what the claims allegedly are "directed to." Appx007; Kollective's Response Brief ("KRB") 028.

By contrast, CEI adheres to the *Alice* Step One rubric and applies the claim language to determine what the claims are "directed to," which is supported with reference to the specification and the file history. CEI's Opening Brief ("COB") 33-36. A comparison of the parties' respective "stage-one filters" shows that one is correctly based on specific claim language, and the other relies solely on broad language from the '452 Patent specification:

| CEI's<br>*Alice* Step One | Kollective and the District Court's<br>*Alice* Step One |
|---|---|
| Claim 1 is "specifically directed to the use of trace routes to segment user content over a dynamic P2P network."<br><br>COB 21; Appx036, 10:25-54 (claim 1); Appx052, ¶¶18, 29, 32, 34 (Amended Complaint) | "[T]he preparation and transmission of content to peers through a computer network."<br><br>KRB 24; Appx006; Appx033, 4:28-65 ('452 Patent specification) |

Relying entirely on a statement cherry-picked from the specification, Kollective and the court ignore the specific claim limitations that tell how a dynamic P2P network is created using trace routes to segment user content. Indeed, after reciting claims 1 and 5, Appx001-002, the district court only cites to the claim language twice in its *Alice* Step One analysis. Appx005-010. Once when making its broad conclusions,

untethered to the claims, about "mere manipulation" and "basic computer functions." Appx007. Then again when summarizing what "computer equipment" is recited. Appx008-009. The court fails to look at the very claim limitations that the CEI pled, using trace route to segment requested content. Appx0046, ¶¶11, 12. This is precisely the type of analysis that the Supreme Court has warned against, directing courts to "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice,* 573 U.S. at 217.

By contrast, applying the *Alice* framework, CEI supports its reliance on the claim language itself, in light of the specification and the file history. COB 24-26, citing, *inter alia*, Appx034, 5:18-19; Appx046 (Amended Complaint quoting and alleging file history, including the examiner's reason for allowance).

### A. Kollective Fails to Refute that Claim 1 Satisfies *Alice* Step One

In rehashing the district court decision, Kollective fails to address, much less refute, CEI's arguments regarding *Alice* Step One: that the court ignored the specific claim limitations, focusing instead on what the court found to be the patent's general "focus" or "purpose." COB 21.

#### 1. The District Court's Generalized "Focus" Holding Ignores the Claim Language

Kollective improperly supports the district court's broad generalizations for the "focus" or "purpose" of the patent. KRB 28; *accord* Appx007 ("At step one, the Court broadly construes the patent's purpose ...."); *but see* COB 21.

Yet, *Alice* Step One requires that the court "articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017), citing *Alice Corp.*, 573 U.S. at 216-17. Kollective fails to show how the district court's determination of the '452 Patent's purpose, without the claim language, satisfies that requirement. KRB 24-25 (string citing to the district court's decision, to the '452 Patent specification, but ***not*** to the claim language). It is well settled that the specification may be broader than the claims. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1055 (Fed. Cir. 1994) ("Claims speak to those skilled in the art. When the meaning of words in a claim is in dispute, the specification and prosecution history can provide relevant information about the scope and meaning of the claim.") (citations omitted). And, relying solely on one statement from the '452 Patent's specification ignores the very purpose of *Alice* Step One, and fatally infects the district court's analysis. COB 21.

#### 2. The '452 Patent Provides Structure to Render the New, Dynamic P2P Network, Not Mere Data Manipulation

Ignoring claim 1's specific structural requirements, Kollective improperly falls back on "data manipulation" precedent, KRB 26-27, but fails to refute CEI's distinguishing arguments. For example, as distinguished from the data manipulation in *Two-Way Media*, claim 1 sets forth how to build the P2P dynamic network ***using a trace route*** to segment requested content, and other limitations, which provided a

new way to share content differently and more efficiently. Appx036, 10:42-54; COB 30-32; KRB 26-27. By contrast, the claim in *Two-Way Media* purported to cover merely the result. *Two-Way Media, Ltd. v. Comcast Commc'n, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017). Kollective makes the same mistake in citing *In re TLI Communications*, 823 F.3d 612 (Fed. Cir. 2016), for the same inapplicable proposition, but fails to address CEI's distinction:

> Unlike *TLI*, [in the '452 Patent] each part of the intrinsic record tells one of ordinary skill in the art, inventively, to define the P2P network based on the client request for content and the metric of how the client will consume the content with and among its peers. *See, e.g.*, Appx037, 11:12-13 ("receiving at least one content request from a client . . . ."); Appx035, 7:14-17; Appx047.

COB 31. Again, Kollective and the district court refuse to confront the claim language and therefore overlook requirements that define the claimed dynamic P2P network.

Indeed, Kollective relies on cases about claims generically covering computers performing typical functions. KRB 26. For example, the *Berkheimer* line of cases are distinguished here at least because claim 1 is directed to the technical improvement of a dynamic P2P network, where the prior art was a static network. *See, e.g.,* Appx036, 10:25-38 (claim 1) ("A system for virtualized computing peer-based content sharing . . . at least one peer-to-peer (P2P) dynamic network . . . wherein the at least one P2P dynamic network is based on at least one trace route . . . ."). The specification elaborates on the improvement:

> Peer nodes or content recipients of the same content provide for redirected content delivery among peer nodes (or users), thereby by-passing any established or static content delivery network (CDN); advantageously, this saves time, improves redundancy, and also reduces or eliminates costs for content delivery over the CDN for the peer nodes.

Appx034, 5:38-44,

In addition, claim 1 requires its dynamic P2P network to be based on a specific common request to consume the same content at the same time, Appx036, 10:31-36, not just some node requesting data. Claim 1 also requires that the claimed dynamic P2P network is further defined according to the quality of connection among the peers sharing the content and receive segmented content based on a trace route. Appx036, 10:49-54. By contrast, the "generic" line of cases is not directed to an improvement over existing technology. *See, e.g.*, *Elec. Commc'ns Techs., LLC v. Shopperschoice.com LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020) ("Claims … that are directed to longstanding commercial practices do not pass step one of the § 101 test.").

Only by ignoring the specific claim requirements is Kollective able to blindly follow the district court's overbroad determination of *Alice* Step One. Once the claims are properly considered, the district court's error is apparent.

### B. Kollective Misrepresents CEI's Positions

Quoting CEI's brief, Kollective sets forth a summary of the district court's errors in applying *Alice* Step One. KRB 32. However, in addressing these errors, Kollective glosses over and misrepresents CEI's arguments.

#### 1. The Court Must Consider the Statutory Presumption of Validity

Kollective does not appear to dispute that, when determining the validity of a patent, whether on a Rule 12 motion or otherwise, the court must consider the statutory presumption of validity, provided by 35 U.S.C. § 282. KRB 32-33. Instead, Kollective merely repeats settled law that a district court may dismiss under Rule 12 for failure to satisfy 35 U.S.C. § 101. *Id.* While that may be true, that's not what happened in this case. Here, the district court explicitly refused to give weight to the presumption of validity, holding without analysis that "the Court is not required to assume the truth of legal conclusions merely because they are in the form of factual allegations." Appx011 (internal citations omitted).

Yet, the district court's refusal to credit the presumption of validity cuts against the statute and settled Supreme Court and Federal Circuit precedent. The burden to prove invalidity rests with the party asserting invalidity. 35 U.S.C. § 282(a). The presumption of validity provides a heightened standard of proof – clear and convincing. *Microsoft Corp. v. i4i Ltd. P'ship.*, 564 U.S. 91 (2011) *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("Any fact, such

as this one [whether combination of claim elements yield "inventive concept"], that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence.") (citing *Microsoft Corp.*, 564 U.S. at 95).

Kollective and the district court erred by assuming that pleading under 35 U.S.C. § 282 is a pure legal conclusion. Appx010; COB 38-39. Yet, the presumption of validity arises out of the Patent Office's examination, and those underlying facts, when pled, form the basis by which a challenger and a court must meet the heightened clear and convincing evidence standard to invalidate a patent. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019). Additionally, Kollective and the court misunderstand how the statutory presumption of validity relates to a Rule 12(b)(6) motion. KRB 45. If the pleading contains factual allegations—taken as true—that prevents the court from *resolving* the patent eligibility question as a matter of law. *Aatrix Software, Inc. v. Green Shades Software Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Under Rule 12, the court must accept the facts pled by the patentee. *Aatrix*, 882 F.3d at 1125; *see also Judd v. Weinstein*, 967 F.3d 952, 955 (9th Cir. 2020) ("accepting as true all well-pleaded allegations of material fact and construing those facts in the light most favorable to the non-moving party."). Yet, Kollective and the district fail to address, much less accept, CEI's specific factual support. Appx011. CEI pled detailed facts supporting the Patent Office's determination that the patentee

possesses a specific new invention—basing a dynamic P2P network on the variability of peer devices requesting consumption of content at the same time. Appx033, 4:55-60; *see* COB 15-16 (setting forth facts pled about the claimed inventive concept and explaining the benefits, *see* Amended Complaint ¶¶10-14 and 24-25 (Appx046-047); COB 22-23 (explaining how the claimed dynamic network is defined by peer nodes consuming the same content); COB 42-43 (noting factual analysis made by the Patent Office that the combination of different specific structures make the claim non-obvious); *see also* Appx046, ¶12 (alleging that the intrinsic evidence supports a finding of patent eligibility). When considered in view of the presumption of validity and the procedural posture of this case, these facts provide ample support that the patent survives this Rule 12 challenge.

It is error for the lay district court to disregard or disagree with factual determinations of the Patent Office and specific assertions made in the ’452 Patent and placed in the Amended Complaint. Yet, that is what the court did here. Appx011.

### 2. CEI Specifically Pled the Asserted Claims’ Advantages over the Prior Art

Contrary to Kollective’s arguments (KRB 33), CEI specifically addressed the ’452 claims’ advantages over the prior art. COB 28-29, 34-35. Not to mention that CEI pled these advantages, *see supra*, which should have inured to CEI’s benefit under Rule 12. *See, e.g., Aatrix*, 882 F.3d at 1125. Despite this analysis covering

several pages of CEI's opening brief, Kollective asserts that "CEI does not even contend ... that such advantages arise from the subject matter *claimed*." KRB 33 (emphasis in original). Yet, Kollective ignores CEI's specific analysis of the claimed requirements that free the dynamic P2P network from the control of the CDN. COB 28-29 & 34-35; Appx047-049 (pleading the dynamic, improved P2P network).

Kollective misplaced reliance on *Cellspin*, that "inventiveness, wholly divorced from the claims or the specification," does not defeat a motion to dismiss, highlights the superficial nature of its analysis. KRB 36, *see Cellspin*, 927 F.3d at 1317. CEI showed that the "inventiveness" is specifically set forth in the claims, which are directed to how to build the virtual layer of a dynamic P2P network based on a peer's request for content and metrics, including a trace route. Appx036, 10:25-54 (claim 1); Appx036, 10:62 – Appx037, 11:1-25 (claim 5). In fact, the patentee amended the claims after an examiner interview and, the added and relied-upon limitations became the reason for allowance over the cited prior art. COB 30-31. These activities, as asserted in the Amended Complaint, provide factual inferences that must be drawn in favor of the patentee. *See, e.g.*, *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261-62 (Fed. Cir. 2017) (holding that where factual inferences must be drawn in favor of the patent owner, the district court commits reversible error when it does otherwise).

### 3. The Claims Teach "How" the Invention Improves "Capacity"

Contrary to Kollective's assertion that CEI failed to "acknowledge" "*how* the purported improvement" over legacy P2P networks "is accomplished" (KRB 30), CEI directly addressed the court's flawed analysis, arguing that the specification and claims teach one of ordinary skill in the art how to build a dynamic P2P network outside the control of a CDN. COB 28-29. CEI explained that "special technology" is not required, and identified where in the specification and the figures, the '452 Patent walks through its algorithm. COB 28 (reciting the steps taught by the '452 Patent to yield the virtual P2P layer); Appx034, 6:46-51. These arguments refute the district court's erroneous conclusion, relied upon by Kollective, that the patent does not disclose any algorithm ...." Appx008; KRB 29.

Kollective seems to accept CEI's proof of the "capacity" problem. *Compare* COB 27 ("[T]he specification is replete with discussion about off-loading data from the CDN to the P2P dynamic networks as plead by CEI, and as set forth in the Statement of the Case (SOC), II.A. *See also e.g.*, Appx045-47, 10-14; Appx048, ¶21; *accord* Appx063-065, ¶10-14; Appx066, ¶21") and COB 4-9; *with* KRB 29 ("[T]he district court indicated that issue ["capacity problem"] did not affect its decision.").) Yet, resolution of the "capacity" problem shows a claimed improvement, disregarded by the district court, when the inference of eligibility from these facts should have been drawn in patentee's favor.

#### 4. Kollective Mischaracterizes the '452 Patent Claims as *Pushing* Content to *Static* P2P Networks

Kollective mischaracterizes the '452 Patent as a CDN pushing content to a static P2P network and then argues that CEI has failed to rebut that misstatement. KRB 35-36. It is as if Kollective did not read CEI's principal brief. The '452 Patent defines the P2P network according to the peer's request for content and with whichever other peers the same content can be consumed at the same time most efficiently. Appx036, 10:36-54 (dynamic P2P network "based on at least one trace route," "distribution of P2P content delivery over the at least one P2P dynamic network is based on content segmentation . . . wherein content segmentation is based on . . . server side scheduling/resource allocation techniques.").

For the purposes of responding to Kollective's Rule 12 Motion and on appeal, CEI does not argue that segmenting based on the trace route is novel under section 102. Instead, CEI pled that the claims include the same structural requirements that caused the PTO to allow the claims. Appx046, ¶12. CEI pled that the claims are also directed to these requirements, which are a source of novelty, non-obviousness, and eligibility. Appx046, ¶13; Appx047, ¶14.

#### 5. Claiming Known Structure in Combination Is Not Prohibited by Section 101

Kollective misunderstands the state of the law regarding the use of known structures and neglects to see that the claims offer one of skill a new result in a

dynamic P2P network free from the command and control of the CDN. The claims do this in a new way by creating a virtual layer—a variable computing platform comprised of devices that all want to consume the same content at the same time as efficiently as possible—by using trace routes to segment content. Appx033, 3:50-54; *see also* Appx036, 9:41-63 (benefit of leveraging dynamic P2P network for, among other things, "massively parallel computation"). Through this, the claims cover a new result, *i.e.*, the efficient distribution of video content peer-to-peer, rather than the CDN pushing it out to each peer node individually. App033, 4:52-60. After all, CEI does not dispute that this claimed new task, way, result could be accomplished by generic computers that the artisan could use to build and program the dynamic network. *See, e.g.*, Appx034, col. 5:64-67 ("[N]o customized or proprietary software download to the peer node content recipient devices is required for the systems and methods of the present invention."). The '452 Patent claims a new network, not new devices. The district court failed to see this major distinction—as Kollective's brief illustrates. This case should be reversed and remanded because CEI's '452 Patent survives *Alice* Step One.

## II. Kollective's *Alice* Step Two Argument Fails Because the District Court Improperly Weighed Evidence on a Rule 12 Motion

This appeal also should be reversed and remanded because CEI's asserted claims satisfy *Alice* Step Two. In reviewing whether the asserted claims include an

"inventive concept," the district court discussed the claim language only to support its misplaced requirement that the claims must rely *solely* on segmentation based on trace routes. Appx013.

The court's contradictions bear focus. First, in *Alice* Step One the court determines that the claims are "directed to an abstract idea," but the court ignores the specific claim limitations to segmenting based on a trace route. Appx010. Then, in Step Two, the court holds that, because the same claims do not use *solely* trace routes, that cannot form the basis for inventive concept. Appx013. These two positions cannot be resolved. If under *Alice* Step Two, a single limitation is the focus of inventive concept, then that limitation should not have been ignored under *Alice* Step One.

### A. Kollective's Rehashing of the District Court's Decision Doubles-Down on its Errors

After reproducing substantially all the district court's step-two analysis, Kollective inaccurately concludes "CEI's appeal never addresses these issues." KRB 45. Yet, it is Kollective who fails to address CEI's arguments that the district court: (1) erred in weighing the merits on a motion to dismiss, (2) erred in drawing inferences against the non-movant, and, setting those errors aside, (3) got the technical merits wrong.

By simply adopting the district court's decision to weigh the merits and draw inferences against CEI, Kollective acknowledges the district court's errors. KRB 42-47. Contrary to Rule 12, Kollective heavily invests in the court's technical opinions, betting that the court was correct that the '452 Patent is simply the CDN pushing content to a P2P network. However, the court failed to appreciate the teachings of the '452 Patent and its claims. The critical point, however, is that when the court finds itself evaluating the technical underpinnings of the patent, a Rule 12 motion should fail.

### B. Kollective's Issues with CEI's Analysis Rely on Incorrect Legal Assumptions

Every invention is essentially a combination of prior art techniques. COB 42; *see, e.g., Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 79 (2012). Kollective repeats the district court's error and overlooks this principle, mistakenly arguing that CEI failed to refute that the claims were "more than well-understood, routine, [and] conventional activity." KRB 49-50. Yet, that is exactly what CEI has been arguing from the beginning.[1]

[1] CEI addresses the faulty presumption of validity argument in Argument section I.B.1., *supra.*

### 1. Kollective Supports the District Court's Faulty *Solely* Determination and Misrepresents CEI's Arguments on Inventive Concept

In order to make its faulty arguments, Kollective asserts that the '452 Patent claims a P2P network that receives content from the CDN, the same as the prior art. KRB 50. This misrepresentation excises the claim requirements of a virtual layer, where the dynamic P2P network receives content segmented by a trace route outside the control of the CDN. *See, e.g.*, Appx036; 10:25-41 (claim 1). The court also misunderstood CEI's assertion of inventive concept and determined that because the claims did not rely *solely* on trace routes, they failed *Alice* Step Two. Appx013.

Each claim requires a dynamic P2P network based on a trace route. Each claim requires that the content is distributed by segmentation. Therefore, when the patentee represented to the patent examiner that the claims use the "trace route to segment requested content," Appx046, the patentee represented that the claimed dynamic network was based on the trace route, and the content would be distributed by segmentation to each peer requesting the content to be consumed at the same time. *See, e.g.*, Appx036 (claim 1); *compare* Appx013.

The claims also define and narrow the P2P network according to how well the peer group can share the content. To do this, the claims narrow how the content is segmented based on the trace route. For example, in claim 1, "the at least one P2P dynamic network is based on at least one trace route . . . the at least one content

delivery server computer is operable to . . . use the trace route to segment requested content . . . wherein content segmentation is based on . . . trace route to CDN and P2P server manager . . . .” Appx036, 10:36-50; *see also* Appx034, 5:56-58.

The claims, the specification, and the file history teach specific ways to define the dynamic P2P network according to the best way to share the content based on current network conditions. Each claim requires segmentation based on the trace route; in addition, each claim also requires a category of techniques that the artisan may use to make the dynamic P2P network as efficient as possible. In claim 1, for example, the first two limitations in the following quote are “segmenting based on the trace route” and the last limitation covers a broad category of segmentation strategies: “[1] the at least one P2P dynamic network is based on at least one trace route . . . [2] the at least one content delivery server computer is operable to . . . use the trace route to segment requested content . . . [3] wherein content segmentation is based on . . . other server side scheduling/resource allocation techniques.” Appx036, col.10:36-54. Nothing in any of the claims makes the trace route limitation optional.

CEI also pled that the ’452 Patent’s use of trace routes was unconventional and not understood and that this led to the patent being allowed over the prior art. Appx046, ¶ 11 (Amended Complaint quoting file history and patentee’s description of the prior art [Weller]). The district court erred in setting these allegations aside at the pleadings stage. Appx013; *see Cellspin*, 927 F.3d at 1318 (“The district court

thus further erred by ignoring the principle, implicit in *Berkheimer* and explicit in *Aatrix*, that factual disputes about whether an aspect of the claims is inventive may preclude dismissal at the pleadings stage under § 101.”).

The district court’s step-two analysis is flawed for refusing to accept CEI’s factually supported allegations of an “inventive concept” supplied by the patentee’s new use of trace routes. Appx013. Aggravating this error, the district court, with Kollective riding sidecar, misunderstands the technical merits that should not have been evaluated in the first place. Appx013-015. Each claim segments based on a trace route because content distributed is always through segmentation based on the trace route. *See* Appx036, Appx037. That the claims offer the artisan a category of segmentation strategies does not change the core requirement that yields the inventive concept of using a trace route to shift control from the CDN to the dynamic P2P network.

Free of distortions, the claims bear no resemblance to the cases Kollective uses for support. *Elec. Commc’n*, 958 F.3d at 1182 (Fed. Cir. 2020) (claims used generic computing components to alert individuals mobile orders were ready for pick-up); *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271-72 (Fed. Cir. 2016) (claims used generic computing components to stream video content). Kollective ignores the root requirement of all the ’452 Patent claims—that the P2P network be a dynamic one based on common requests for content to be

consumed efficiently based on trace routes and at the same time. When this "inventive concept" is acknowledged, *Elec. Commc'n* and *Affinity* are readily distinguished.

#### 2. Kollective Excuses the District Court's Weighing of the Evidence

Kollective's pat answer to the district court weighing the technical merits is that a court need not accept "*ipse dixit* everything in CEI's Amended Complaint." KRB 46-47 & 49-50. Yet, this argument rests on the flawed premise that the district court's technical interpretation is correct. Where the Court properly invalidates a patent under section 101 on a motion to dismiss, the technical questions are not in dispute and can be resolved against the patentee as a matter of law. *See, e.g.*, *Genetic Techns. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1377-78 (Fed. Cir. 2016) (amplifying and analyzing DNA admittedly well-known prior art techniques).

Here, by contrast, the court challenged CEI's allegations rather than accepting them. Appx013-015. The intrinsic record and the Amended Complaint assert that the patent uses trace routes in a different way to accomplish a dynamic and more efficient network. Appx033, col. 3:48-54; Appx046, ¶ 11. Faced with this evidence and specific pleading, the court should have accepted the allegations as plausible. *Cellspin*, 927 F.3d at 1318. Instead, the district court conducted its own investigation of the technical *bona fides* alleged in the Amended Complaint. Appx013-Appx015.

The court legally erred by weighing CEI's allegations against the court's own understanding of the technology. *See, e.g.,* Appx015 ("The patent does not explain how the content delivery server computer or a peer node transmitting data would recognize other nodes in close network proximity."). Kollective even concedes that the district court conducted a technical analysis—arguing to this Court that the '452 Patent does not segment content based on a trace route. KRB 49-50. Hence, there appears to be no dispute that the district court performed its own technical analysis—one that never should have been performed on a Rule 12(b)(6) motion.

### 3. Kollective Misunderstands the §101/§112 Dispute

Whether a person of ordinary skill in the art could build the invention is a question of fact. COB 43-44. On a Rule 12(b)(6) motion, the district court's review is dramatically more confined to whether the Amended Complaint made plausible factual allegations. *See, e.g., Aatrix*, 882 F.3d at 1125. The district court erred because, on its own and without the benefit of expert testimony, it delved into what the court perceived to be the technical shortcomings of the invention based on the court's reading of the specification. Appx013-Appx015. Yet, the court is hardly one of ordinary skill.

Kollective highlights this error by arguing that the district court's technical interpretation was correct. KRB 47. Yet, whether the claims adequately teach one of skill in the art how to automatically group the peers in the dynamic network is not

the question to be resolved at the pleadings stage. Rather, the question is whether the intrinsic record and the Amended Complaint plausibly suggest that claims teach the artisan to automatically group the peers in a dynamic network. COB 44-46 (citing pleadings and patent specification).

## III. Kollective's "Premise Argument" Ignores Settled Doctrine that All Claim Limitations are Required

Kollective inexplicably argues that "both claims 1 and 5 are expressly *not* limited to segmenting based on a trace route, ...." KRB 22 (emphasis in original). However, Kollective is dead wrong. Both claims 1 and 5 specifically *require* "trace route" limitations and require the use of "trace routes to segment requested content." Appx036, 10:37-38, 44-50 (claim 1); Appx037, 11:6-7, 14-16 (claim 5). Indeed, this is not a case where CEI is attempting to imply or read the "trace route" limitations into the claims; rather, they are expressly in the claim – in those exact words. *See, e.g.,* Appx036, 10:36-37; *accord* Appx037, 11:6-7; *see also* Appx036, 10:42-45; *accord* Appx037, 11:14-16; Appx036, 10:49-50. Given the express language of the claims, Kollective's argument is just plain wrong.

CEI does not dispute that it is relying on the limitations in wherein clauses that require "trace route," among other limitations. KRB 16. Indeed, that has been CEI's consistent argument from the beginning. Appx046, ¶ 11; Appx221; Appx245. Contrary to Kollective's argument, it is well settled that wherein clauses can provide

claim limitations. *See e.g., Hoffer v. Microsoft Corp.*, 405 F.3d 1326 (Fed. Cir. 2005) (finding wherein clauses to be limiting when "described in the specification and prosecution history as an integral part of the invention."). Here, as in *Hoffer*, the specification, the file history, and the plain language of the claims support the assertion that "trace route" is indeed a claim limitation. Appx0033 (embodiments include "dynamic networks base[d] upon a trace route"); Appx036, 10:36-37 (claim 1: "one P2P dynamic network is based on at least one trace route"). The Patent Office's reliance on the last "wherein clause" to allow the patent claims, confirms that the Patent Office also considered the "wherein clause" to be limiting. Appx0245.

By contrast, in a misguided attempt to shore-up the district court's erroneous "solely" argument, Kollective asserts that "it is entirely irrelevant whether content is segmented based on a trace route because ***no claim in the '452 patent claims that***, ...." KRB 20 (emphasis in original). Yet, the final wherein clause, along with those before it, recites specific limitations; it connects them with commas, and concludes with "and." The law is well-settled that "and" means "all" recited limitations are required. *SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 886 (Fed. Cir. 2004) ("The phrase 'at least one of' precedes a series of categories of criteria, and the patentee used the term 'and' to separate the categories of criteria, which connotes a conjunctive list."). Kollective seems to admit this later. KRB 21 ("the

’452 patent claims segmenting data ***based—not merely on trace route*** but—on any ‘server side scheduling/resource allocation technique.’”) (emphasis added); *see also* Appx036,10:49-54; *see supra* at Arg. II.B.1. (discussing how the claimed server-side segmentation techniques further define the dynamic P2P network according to current network conditions).

Kollective’s *faulty*, “faulty premise” argument attempts to obscure the district court’s legal error in requiring the claims to rely *solely* on trace routes. KRB 21; Appx013. Yet, there is no legal requirement that a claim rely solely on one limitation to satisfy patent eligibility under section 101, much less to define over the prior art. COB 41-43; *see also Mayo*, 566 U.S. at 79, citing *Diamond v. Diehr*, 450 U.S. 175 (1981). Under the district court’s logic, if a claim directed to solely limitation A has inventive concept, then a claim directed to limitations A, B, and C, would also have inventive concept because it is narrower, as are the ’452 Patent claims. The Amended Pleadings specify that the use of trace routes, in combination with other elements, supports the inventive concept. Appx045-046, ¶¶ 12-14.

## IV. The District Court’s Failure to Analyze Non-Asserted and Dependent Claims Requires Remand

### A. Contrary to Kollective’s Arguments, the District Court Did Not do a Representative Claim Analysis

Kollective’s representative claim argument fails because the court did not do a representative claim analysis, nor did CEI ever agree to a representative claim

analysis. In addition, if claim 1 is representative, that begs the question—representative of what? CEI did not assert all of the claims in the ’452 Patent, and the district court makes a generalized holding that the ’452 Patent invalid.

#### 1. Kollective’s Assertion of Representative Claim Does Not Alleviate the District Court’s Burden

It makes no difference that “Kollective’s motion to dismiss expressly advanced the proposition that” claim 1 was representative of all the patent claims. The district court did not so hold, CEI did not agree, and all claims were not at issue.

The cases relied upon by Kollective do not say otherwise. In *Content Extraction and Transmission LLC v. Wells Fargo, Bank Nat’l Ass’n*, 776 F.3d 1343 (Fed. Cir. 2014), “after conducting its own analysis, the district court determined that ... [the claims were representative], because all of the claims are substantially similar and linked to the same abstract idea.” *Id.* at 1348. By contrast, here, the district court did no analysis, nor did it identify claim 1 as representative. Rather, it merely invalidated the entire patent. Appx005; Appx015; *compare* Appx217 (CEI’s Opposition to Kollective’s Motion to Dismiss, specifying additional limitations in claims 5, 13 and 14); Appx223 (distinguishing claim 13); Appx223-224 (analyzing claim 1) Appx225 (distinguishing claim 13); Appx230 (analyzing claim 1); Appx233-235 (distinguishing claims 1 and 5). Had the district court done an analysis, it would have recognized that at least asserted claim 5 includes an

additional limitation of "automatically identifying" a peer in close network proximity. Appx036, 11:21-25; *see also id.* (claims 6-15 teaching methods of automatically grouping and identifying peers).

Kollective also relies on the report and recommendation (R&R) in *Phoenix Licensing, LLC v. Consumer Cellular, Incorporated*, No. 2:16-cv-152, Dkt. 349 (E.D. Tex. Mar. 8, 2017). The R&R reports the magistrate's analysis of the asserted claims in determining that ten of the 974 asserted claims were representative. *Phoenix*, slip Op. at 16-17. Here, by contrast, the district court did no analysis of whether the four asserted claims, much less the non-asserted claims, were "substantially similar" or linked to the same "abstract idea." *Id.*

#### 2. Stating that Additional Claims *May Be* Asserted Does Not Put All Claims at Issue

Kollective brazenly asserts that CEI asserted all of the '452 Patent claims by stating its intention to add additional patent claims, should evidence be developed to bear that out:

> 27. Without limiting the ***claims that will be asserted or the products and services that will be accused of infringement*** in this action, Kollective is infringing Claim 5 of the '452 patent.

Appx050 (emphasis added); KRB 52-53. Yet, CEI drafted paragraph 27 of the complaint in the future tense, leaving open that more patent claims and more Kollective products may be asserted as the case proceeds. *Cf. Streck, Inc. v. Res. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1283-84 (2012) (pleading of "one or more

patent claims" later narrowed by infringement contentions; holding that Article III jurisdiction limited to later, narrowed set of claims).

### 3. Even if One Claim of a Patent Is Infringed, the Patent is Infringed

Kollective improperly takes issue with CEI talking about infringement of the '452 Patent in the Amended Complaint, alleging that the mere statement that "Kollective has directly infringed the '452 patent" (Appx050; Appx059) asserts all of the claims in the '452 Patent. In order to make this argument, Kollective ignores the fact that infringement of just one claim of a patent means the patent is infringed. *Alcon Res. Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1186 (Fed. Cir. 2014) ("[A] classic patent infringement case in which infringement exists if at least one claim of an asserted patent reads on a product or process . . . .").

Kollective's arguments about the Northern District of California Patent Local Rules actually support CEI's position. Contrary to Kollective's suggestion, the Local Patent Rules do not somehow remove a patentee's responsibility to identify the asserted patent claims in the complaint. Instead, they *require* the patentee to explain "where and how each limitation of each asserted claim is found within each Accused Instrumentality, ...." LPR3-1. That is exactly what CEI did in the complaint specifically for patent claims 5, 1, 2, and 3. Appx050-059. Therefore, CEI's complaint satisfies the more stringent requirements of LPR3-1 for the asserted claims, but that certainly does not imply that the non-asserted claims are also at issue.

Kollective's reliance on *Windy City Innovations, LLC v. Microsoft Corporation*, 193 F.Supp. 3d 1109 (N.D. Cal. 2016) has no bearing here. 193 F.Supp. 3d at 1115. In *Windy City*, the motion to dismiss was for failure to state patent *infringement* claims, *id.* at 1110, not for alleged failure of patent eligibility. The *Windy City* court denied defendants motions to dismiss on almost all accounts, holding that

> The Complaint here is not so riddled with such deficiencies. To the contrary, the Complaint describes (i) the Accused Instrumentalities and the functionalities of those products which allegedly infringe on plaintiff's patents and (ii) the ways in which the Accused Instrumentalities meet claims of the Patents.

*Id*, 193 F.Supp. 3d at 1115.[2]

In addition, Kollective's argument here contradicts its earlier arguments about sufficient pleading. Notably, if CEI is found to adequately assert all claims of a patent simply by stating that "Kollective has directly infringed the '452 patent," without specifically identifying claims other than 1, 2, 3, and 5, then it is hard to fathom how CEI's very fact specific pleadings about how the asserted claims satisfy 35 U.S.C. § 101 and their presumption of validity would be properly dismissed under Rule 12. *See* Appx045-049 (under the heading *Eligibility of U.S. Patent No. 9,432,452*).

[2] The court dismissed the contributory infringement and willfulness counts for failure to plead required elements. *Id.* at 1117.

### B. Kollective Cannot Cure the District Court's Jurisdictional Flaw

Kollective's assertion that, by addressing "every claim (claims 1-15)" in its motion to dismiss, Kollective somehow put claims 4, and 6-15 at issue in the case, ignores pleading requirements. In order to put the remainder of the claims at issue, Kollective needed to file a Counterclaim asserting invalidity of the remaining claims. *See, e.g., Streck, Inc.*, 665 F.3d at 1281. That it did not do.[3] A Rule 12 motion is only entitled to dismiss what the patentee alleged, nothing more. *See generally id.* (holding that a counterclaim for declaratory judgment of invalidity could only be maintained according to the scope of asserted claims). Nor can CEI tacitly "acknowledge jurisdiction" in responding to Kollective's motion. KRB 54-55. Kollective's reliance on the doctrine of "waiver" is inapposite. KRB 55. Causes of action cannot be waived when they were not at issue in the first place. *Compare Streck, Inc.*, 665 F.3d at 1281 (district court lacks declaratory-judgment jurisdiction over unasserted claims), *with Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) (party waived infringement arguments made for the first time on appeal). CEI specifically pled a subset of claims, putting only those claims at issue. CEI cannot "waive" the unasserted claims, just as the reverse is true; the

---

[3] The court recognized this for infringement, noting that CEI alleged Kollective's "product infringes under claims 1, 2, 3, and 5," Appx003, but forgot these specifics for its validity determination that the "'452 Patent is directed to patent ineligible subject matter under § 101." Appx015.

district court is without jurisdiction to determine eligibility for unasserted claims 4, 6-15.

## CONCLUSION

CEI requests the Court reverse or vacate and remand the district court's patent eligibility holding. At the very least, the Court should reverse the district court's overbroad invalidation of the entire '452 Patent rather than just the analyzed claims.

Date: February 18, 2022

*/s/ Meredith Martin Addy*

Meredith Martin Addy
**AddyHart P.C.**
10 Glenlake Parkway, Suite 130
Atlanta, Georgia 30328
312.320.4200
meredith@addyhart.com

Benjamin M. Cappel
**AddyHart P.C.**
401 N Michigan Ave, Suite 1200-1
Chicago, Illinois 60611
732.991.7285
benjamin@addyhart.com

- and -

Matthew M. Wawrzyn
**Wawrzyn LLC**
200 Randolph Street, Suite 5100
Chicago, IL 60601
312.235.3120
matt@wawrzynlaw.com

*Counsel for Plaintiff-Appellant*
*Cooperative Entertainment, Inc.*

**PROOF OF SERVICE**

I hereby certify that on February 18, 2022, an electronic copy of the foregoing Reply Brief of Appellant Cooperative Entertainment, Inc. was filed with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system and thereby causing a "Notice of Electronic Filing" to be served on all counsel of record.

Date: February 18, 2022

*/s/ Matthew M. Wawrzyn*
Counsel for Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b), this document contains 6,998 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Time New Roman.

Date: February 18, 2022

*/s/ Matthew M. Wawrzyn*
Counsel for Plaintiff-Appellant